COMMONWEALTH vs. FRANCO CAPARROTTA.

No. 91-P-1177.

Plymouth. October 19, 1992. - May 13, 1993.

Present: ARMSTRONG. JACOBS. & LAURENCE. JJ

*Identification. Practice, Criminal*, Instructions to jury.

At the trial of a defendant charged with assault and battery, assault and
    battery by means of a dangerous weapon, and wilful and malicious in-
    jury to property, the judge's refusal to instruct the jury, as requested by
    the defendant, on the possibility of a good faith mistake in the identifi-
    cation of the defendant by the victims constituted reversible error,
    where the defendant not only legitimately raised and persistently
    pressed the issue of mistaken identification but also testified to an alibi
    and presented two alibi witnesses, and where other testimony hardly
    made the case against the defendant overwhelming independent of the
    identification evidence. [476-477]


COMPLAINTS received and sworn to in the Brockton Division of the District Court Department on October 20, 1989.

On appeal to the jury session of the Wareham Division, the cases were tried before *Joseph R. Welch*, J.

*Murray A. Kohn* for the defendant.

*William C. O'Malley*, District Attorney, & *John P. Corbett*, Assistant District Attorney, for the Commonwealth, submitted a brief.

JACOBS, J. The defendant was convicted by a jury in the District Court on complaints of assault and battery, assault and battery by means of a dangerous weapon, and wilful and malicious injury to property. We agree with his contention on appeal that the judge erred in refusing to charge the jury on a good faith mistake in identification.

The pertinent identification testimony was given by Edward Foley, Jr., and his girl friend, Diane Pendergast. They told of being parked in Pendergast's automobile on an unfin-

ished road in Brockton at about 11:30 P.M. on September 23, 1989, when a blue Ford Escort automobile, driven by a person who was unknown to both Foley and Pendergast and whom they later identified as the defendant, pulled up directly alongside. In the course of a brief conversation, the driver of the Ford swore at Foley and sped away. Foley and Pendergast made a mental note of at least some of the numbers of the Ford's license plate. A few minutes later, the same person appeared, on foot, at the window next to Foley, sprayed a burning substance from a black tubular object into Foley's face, and began to kick and punch their car. As Foley and Pendergast sped away, the assailant threw rocks and dirt at their vehicle. Shortly thereafter, Foley and Pendergast, while looking for the assailant, saw him walking along the street on which Foley lived, not far from where the assault occurred. After the person ran off, Foley and Pendergast continued their search and observed, parked nearby, what they perceived to be the same blue Ford Escort that the assailant had driven. Upon returning to his home, Foley saw the same person run by and smash an object against the window of Pendergast's vehicle. About an hour after the original assault, Foley again drove to where he had last observed the Ford and found it had been moved from the front of a nearby house into its driveway. Foley peered into the window of the house and saw a person he identified as the assailant. He also noted that the license plate number of the Ford parked in the driveway matched the number of the vehicle driven by the assailant.[1] The next morning, Foley accompanied a police officer to the same house, where he saw the defendant emerge, speak with the officer, and then go to the Ford and bring back the "[s]ame black, tubular object." The police officer did not testify. The defendant later testified

---

[1] At the time of the incident, Foley testified, he looked at the license plate of the assailant's car and "[r]ead the license plate number off to [his] girlfriend." After he saw the Ford Escort parked in the driveway he wrote down the license plate number, which he testified matched the number of the automobile he had seen earlier. At trial he could recall only the first two numbers of the license plate.

that the canister was one he had purchased for his protection.

When the case was called, counsel for the defendant stated to the judge, "[T]his is a case of mistaken identity." During his opening statement to the jury he referred to the distraught condition of Foley and Pendergast and to their limited opportunity to observe the assailant. Much of the examination of Foley and Pendergast during the trial focused on and elicited testimony relating to factors which may have affected their ability to remember and identify the assailant. There were some inconsistencies in that testimony. The defendant's case consisted almost entirely of alibi testimony from him, his girlfriend, and his mother. During his closing statement, defense counsel again suggested that the defendant was mistakenly identified by Foley and Pendergast and raised questions about their ability to observe accurately under the conditions prevailing on the night of the assault. In that closing argument, he stated that he was not maintaining that Foley and Pendergast had lied, but rather that they were mistaken in their identification of the defendant.

The defendant requested, in writing, that the judge instruct the jury on identification in accordance with the model instructions set forth in the appendix of *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), and on the possibility of a good faith error of identifying witnesses, citing *Commonwealth* v. *Pressley*, 390 Mass. 617, 619 (1983).[2]

---

[2]In addition to requesting a *Rodriguez* charge, the defendant asked for the following instruction:

> "In assessing the testimony in which the Defendant was identified as the perpetrator of the crime, you must consider the possibility of 'good faith error' by the identifying witness. That is, in addition to assessing the credibility of the witness, you must also consider whether the witness is honestly mistaken in his identification of the Defendant as the offender. Even if you find that the witness is sincere and honest in his belief that the Defendant committed the offense, you must still return a verdict of not guilty unless you are convinced beyond a reasonable doubt that the identification is accurate. The burden is on the Commonwealth to prove beyond a reasonable doubt that the witness' identification, however honest, is correct."

The judge expressly rejected the requests and, so far as eye-witness testimony was concerned, instructed the jurors only with respect to honesty and the bias aspects of credibility. At the end of the judge's charge, the defendant objected to the failure to give the requested instructions.

*Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738 (1978), *S.C.*, 378 Mass. 296 (1979), established that "a case legitimately raising a question of mistaken identification . . . require[s] specific instructions designed to assist the jury in their appraisal of the identification evidence." *Commonwealth* v. *Durant*, 10 Mass. App. Ct. 768, 771 (1980). *Commonwealth* v. *Pressley*, 390 Mass. at 620, went on to hold that "[f]airness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it. This is precisely the thrust of *Commonwealth* v. *Rodriguez*, [378 Mass.] at 302 . . . ." "These principles assume particular importance whenever there is a question of possible mistaken identity and the defendant takes the stand to testify to an alibi or asserts an alibi through other witnesses called in his behalf." *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. at 743. Here, where the defendant not only legitimately raised and persistently pressed the issue of mistaken identification but also testified to an alibi and presented two alibi witnesses, the failure to give a *Pressley* charge "tended at least to submerge one of the crucial issues in the case, if not to rob the defendant of his defense entirely." *Commonwealth* v. *Rodriguez*, 378 Mass. at 302. The judge's instructions imposed upon the jury only the task of crediting either the witnesses for the prosecution or those of the defendant ("You will have to determine which witnesses to believe . . . "). The critical third alternative of concluding that the prosecution witnesses were honestly mistaken in their identification of the defendant was not articulated in the instructions. This case is distinguishable from *Commonwealth* v. *Elam*, 412 Mass. 583, 587 (1992), in which "counsel for the defendant neither requested [a good faith mistake in identification] charge, nor objected to the judge's refusal

to give it," and the judge's instructions tracked the model instruction in *Rodriguez* and "clearly alerted the jury to the issue of misidentification."

Also, the testimony concerning the black tubular object, in the absence of any explanatory testimony from the police officer to whom the defendant handed that object, hardly made the case against the defendant overwhelming independent of the identification evidence. Contrast *United States* v. *Kavanagh*, 572 F.2d 9, 13 (1st Cir. 1978) ("the government's case against this defendant did not hinge on possibly mistaken identification testimony alone"; substantial independent physical evidence, including fingerprint evidence linking the defendant to a vehicle involved in the crime, rendered not prejudicial the failure to give an identification charge); *Commonwealth* v. *Benbow*, 16 Mass. App. Ct. 970, 972 (1983) (identification was not a "pivotal issue"; the defendants were found about fifteen or twenty minutes after the robbery next to the vehicle used in the robbery with items stolen from the victims' purses in their possession). We conclude that constancy in the testimony of identification witnesses by itself is insufficient reason to deny a requested *Pressley* charge where, in the circumstances of the case, the accuracy of the identification might reasonably be questioned by the jury — especially where independent evidence linking the defendant to the alleged crime is not overwhelming.

*Judgments reversed.*
*Verdicts set aside.*