COMMONWEALTH VS. DYVEE H. SPENCER.

No. 96-P-0669.

Hampden. January 7, 1998. - June 5, 1998.

Present: GREENBERG, DREBEN, & LENK, JJ.

*Delinquent Child. Juvenile Court,* Delinquent child. *Practice, Criminal,* Transfer hearing, Juvenile delinquency proceeding, Instructions to jury. *Evidence,* Juvenile delinquency, Hearsay, Identification. *Identification.*

A Juvenile Court judge's findings regarding a juvenile's dangerousness and amenability to rehabilitation were amply supported by the evidence at a transfer hearing, and the judge did not abuse her discretion in granting the Commonwealth's request to transfer the case to Superior Court for trial. [35-37]

At the trial of a criminal case, in which the sole issue was the identification of the assailant, in which the case against the defendant independent of the identification testimony was not strong, and in which the evidence was sufficient to have led the jury to conclude that the witnesses made a good faith mistaken identification of the defendant, the judge's refusal to give a requested instruction on mistaken identification was reversible error. [37-41]

INDICTMENTS found and returned in the Superior Court Department on September 1, 1994, following a transfer hearing in the Springfield Division of the Juvenile Court Department before *Rebekah J. Crampton, J.*

The cases were tried before *John F. Moriarty, J.*

*Susan E. Taylor* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

LENK, J. This appeal arises out of the Springfield Juvenile Court's waiver of jurisdiction over and the transfer of the defendant's case to Superior Court pursuant to G. L. c. 119, § 61 (as amended by St. 1991, c. 488, §§ 2-6), and the defendant's subsequent conviction by a Superior Court jury of mayhem, G. L. c. 265, § 14; assault and battery by means of a

dangerous weapon (both knife and gun), G. L. c. 265, § 15A(b)[1]; and armed assault with intent to rob, G. L. c. 265, § 18(b). On appeal, the defendant contends that (1) the Juvenile Court judge erred in allowing the Commonwealth's motion to transfer jurisdiction to the Superior Court; and (2) the trial judge erred in refusing to instruct the jury on good faith mistaken identification. We conclude that the denial of the requested jury instruction was improper and reverse the defendant's convictions.

*Facts.* We summarize the evidence as follows. On December 18, 1993, at approximately 7:30 P.M., Eddie Ortiz was standing in front of 25 White Street in Springfield speaking with Anthony Fuller and "Walter" when two black men drove up in a maroon Chevrolet Impala, left the car, and asked the three youths if they had any "weed." One of the two men was wearing a "Jason" mask[2] and carrying a gun and the other was unmasked and carrying a knife. The man with the knife walked up to Walter and pulled out his jackknife, snapping the blade into place. Walter ran away. The men then demanded money from Ortiz, who tried to get on his bike to leave. The men grabbed Ortiz and dragged him around the corner of the building. The man with the knife reached out and slashed Ortiz across the face from his forehead to his mouth and then told his friend to "shoot the Spic," which his friend did. The two assailants then left the scene.

Fuller, meanwhile, had attempted to flee on foot as Ortiz was being assaulted. As he walked away, he saw the assailants take Ortiz behind the building, and heard a shot. Fuller had traveled some distance from the scene when the Impala pulled up next to him. One of the men pointed the gun at him but the other man said, "Don't do it," and the car drove off. Fuller doubled back to 25 White Street and saw Ortiz being taken away on a stretcher.

That night the police brought Fuller to the Springfield police station to make an identification of Ortiz's assailants. Fuller reviewed two boxes of photographs of black males under the

[1]The jury found the defendant guilty of both counts of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A(b); one for assaulting Eddie Ortiz with a knife, and another for assaulting Eddie Ortiz with a gun. At the sentencing hearing, the trial judge dismissed the indictment for assault and battery by means of a dangerous weapon, a knife, as duplicative of the mayhem charge.

[2]A hard plastic face mask, typically worn to play hockey.

age of nineteen and identified the defendant, Dyvee Spencer, as the person he had seen with the knife. Two days later, Dyvee Spencer was pulled over for running a red light and was arrested for the traffic violation. When the arresting officer pat frisked the defendant, he found a jackknife which both Fuller and Ortiz later identified as being the knife wielded by Ortiz's assailant on December 18, 1993. At a later date, both Fuller and Ortiz picked the defendant out of a lineup comprised of four young black males that the defendant's Juvenile Court attorney had arranged.

At trial, the defendant presented an alibi defense. The defendant's mother, Diana Spencer, testified that the defendant was with her at her place of employment at the time of the offense. Her employer, Harry Juul, corroborated this testimony. Juul testified that the defendant had stopped by his house, where Diana Spencer works as his personal care attendant, at shortly after 7:00 P.M. on Saturday, December 18, 1993, while Juul was watching "Star Trek: The Next Generation" on television. According to Juul, the defendant stayed for approximately one hour, while waiting for his mother to finish her duties and give him a ride, and left sometime after 8:00 P.M. while Juul was watching the television show "Cops."

1. *Decision to transfer.* Prior to trial, the defendant filed a motion to dismiss claiming that he was improperly transferred for trial as an adult under G. L. c. 119, § 61, because the Juvenile Court judge (1) relied upon unreliable hearsay on the issue of dangerousness; and (2) disregarded the clear and convincing evidence that the defendant was amenable to rehabilitation as a juvenile. The motion was denied. The defendant now asserts that the granting of the Commonwealth's request to transfer his case to the Superior Court and subsequent denial of his motion to dismiss were error. They were not.

A judge has wide discretion in determining whether a juvenile should remain within the juvenile system or be tried as an adult. *A Juvenile v. Commonwealth,* 370 Mass. 272, 282 (1976). Nonetheless, the judge must make written findings, supported by subsidiary findings pursuant to G. L. c. 119, § 61, regarding the juvenile's dangerousness and amenability to rehabilitation. *Commonwealth v. O'Brien,* 423 Mass. 841, 845 (1996). There is no de novo review at the appellate level. *Commonwealth v. Matthews,* 406 Mass. 380, 383-384 (1990). Rather, this court must determine whether there has been a material failing in the

prescribed steps, i.e., a serious deficiency in the subsidiary findings, leading to the issuance of the order of transfer. *Id.* at 384. Thus, absent an abuse of discretion, we will not disturb the judge's findings. *Commonwealth* v. *O'Brien*, 423 Mass. at 846.

In reviewing the Juvenile Court judge's decision to transfer, the Superior Court judge found that there were "no serious deficiencies in the subsidiary findings[, that] the Juvenile Court judge followed the procedures required by G. L. c. 119, § 61[,] and [that the Juvenile Court judge] made all the statutory findings." In her findings of fact and rulings of law, the Juvenile Court judge noted that (1) there was probable cause to believe that the defendant, with a codefendant, held up Ortiz at gunpoint and knifepoint resulting in "a cold blooded, merciless shooting in the abdomen, as well as a gratuitous slash of a knife across [Ortiz's] face leaving permanent scars"; (2) there was probable cause to believe that the defendant thereafter shot two men in broad daylight, while the charges arising from the Ortiz incident were pending the transfer decision; and (3) the defendant would receive, at best, only a few months of treatment with the Department of Youth Services before his eighteenth birthday. Based upon her findings, she concluded that the Commonwealth had proven by a preponderance of the evidence that "retaining the defendant in the Juvenile Justice System would not begin to offer adequate protection of the public from a young man who this court finds to be a significant danger to society and who cannot be rehabilitated within the Juvenile Justice System."

We agree with the Superior Court judge that there was ample evidence to support the Juvenile Court judge's subsidiary findings. The defendant was charged with an armed assault with an attempt to rob in violation of G. L. c. 265, § 18, an offense sufficiently serious to trigger a mandatory transfer hearing. G. L. c. 119, § 61. For such an offense, there is a rebuttable presumption that the defendant is a danger to the public and not amenable to rehabilitation. *Ibid.* Once this presumption is rebutted, the Commonwealth's burden at the transfer hearing is proof by a preponderance of the evidence. *Commonwealth* v. *Wayne W.,* 414 Mass. 218, 222 (1993). It is clear, given the facts of the brutal assault in this case, that this burden was met.

The use of hearsay evidence at a transfer hearing is not improper. The rules of evidence are more relaxed at a transfer hearing than at trial and hearsay evidence is, in fact, admissible.

See *Commonwealth* v. *Watson*, 388 Mass. 536, 540 (1983) (the test for admissibility is fundamental fairness "and not the application of rules of evidence concerning the admission of hearsay"). Consequently, it was not improper for the judge to admit hearsay testimony regarding the defendant's subsequent charge of assault and battery by means of a dangerous weapon. Moreover, although there was evidence presented that the defendant was amenable to rehabilitation as a juvenile, the judge was not bound by views she found unpersuasive. See *Two Juveniles* v. *Commonwealth*, 381 Mass. 736, 744-745 (1980). The defendant has an extensive history of delinquency[3] and his probation officer described him as "a young man at risk of further criminal involvement." In addition, the defendant was eligible for only a few months of treatment with the Department of Youth Services before his eighteenth birthday. The Juvenile Court judge did not abuse her discretion in allowing the transfer of the defendant to the Superior Court for prosecution as an adult.

2. *Jury instructions.* At trial, the sole issue in the case was the identification of the man who knifed Ortiz on the night of December 18, 1993. The Commonwealth argued in closing that the evidence identifying the defendant as the assailant was strong and persuasive. Defense counsel argued that Ortiz and Fuller made an honest but mistaken identification of the defendant. At the close of final arguments to the jury, defense counsel submitted proposed jury instructions to the court which included an instruction on honest but mistaken identification. The judge declined to give the mistaken identification instruction and defense counsel preserved his objection on the record.

A judge is not required to give a "good faith error" instruction in every case in which the issue of identification plays a significant role. In order for the jury instruction to be warranted, there must be sufficient evidence which, if believed, might lead the jury to conclude that the witnesses made a good faith mistaken identification of the defendant. Compare *Commonwealth* v. *Seabrooks*, 425 Mass. 507, 515 (1997) (once evidence is admitted at trial which, if believed, might create a reasonable doubt concerning the defendant's criminal responsi-

---

[3]At the time of trial, the defendant had cases pending for possession of a Class B substance, two charges of trespassing, possession of a Class B substance with intent to distribute, and two adult charges of assault and battery by means of a dangerous weapon.

bility at the time of the crime, an instruction on insanity is warranted). In some cases the parties are so well known to each other or so closely related that under sufficient lighting and with appropriate physical proximity, the identification by the victim is either true or the victim is lying. *Commonwealth* v. *Pressley*, 390 Mass. 617, 619 (1983). This, however, is not such a case.

In deciding whether the judge should have charged on "good faith error," we assume the version of the facts most favorable to the defendant. See *Commonwealth* v. *Schnopps*, 383 Mass. 178, 179 (1981) (facts are taken in the light most favorable to the defendant in deciding whether the evidence required the judge to instruct the jury on voluntary manslaughter). The assault on Ortiz took place at approximately 7:30 P.M. on December 18, 1993. Both Fuller and Ortiz testified that it was dark out that night but that the lighting was fine.[4] Nonetheless, Fuller and Ortiz gave conflicting descriptions of what the defendant was wearing that night. Fuller described the defendant as wearing a long black coat, black pants, a white shirt which hung lower than his jacket, and a hat, while Ortiz testified that the defendant was wearing a "red hoody" and nothing on his head.

Both Fuller and Ortiz testified that they did not know the defendant well. Ortiz, in fact, admitted that the defendant was not known to him at all, that he had never seen him before and that he did not know his name. Fuller, on the other hand, recognized the defendant as someone who used to live nearby in his neighborhood. Fuller admitted that although he had seen the defendant around, the defendant was not well known to him. Fuller testified that he "used to see him a couple of times on the bus, not every day, a couple of times" and that a friend told him the defendant's name.

Fuller and Ortiz, however, did positively identify the defendant, on more than one occasion, as the man who knifed Ortiz. Immediately after Ortiz was assaulted, Fuller was brought to the Springfield police station where he identified the defendant's photograph out of approximately 100 photographs of young black men. Two months later, Fuller and Ortiz both identified the defendant out of a lineup of four young black men

---

[4]Ortiz testified that, as to the place where the attack occurred, behind 25 White Street, there was a light connected to the wall and that "it was pretty light for me to see his face and what he had on."

arranged by the defendant's Juvenile Court attorney.[5] Finally, at trial, Fuller and Ortiz once again positively identified the defendant. Nonetheless, constancy in the testimony of identification witnesses by itself is insufficient reason to deny a requested *Pressley* charge where, in the circumstances of the case, the accuracy of the identification might reasonably be questioned by the jury and independent evidence linking the defendant to the alleged crime is not overwhelming. *Commonwealth* v. *Caparrotta*, 34 Mass. App. Ct. 473, 477 (1993).

Here, the only independent evidence of the defendant's complicity, apart from the identifications in person and by photograph by Fuller and Ortiz, was the knife found on the defendant's person at the time of his arrest. Yet, the witnesses' descriptions of the knife were inconsistent and the knife itself had no unique identifying characteristics. Prior to trial, Ortiz described the knife as silver. At trial, Ortiz described the knife as being gold and black. Fuller testified that the knife had a black handle and a silver blade. This testimony hardly makes an overwhelming case against the defendant independent of the identification evidence. See *Commonwealth* v. *Caparrotta*, 34 Mass. App. Ct. at 477.

During his closing statement, defense counsel argued that the defendant was mistakenly identified by Fuller and Ortiz and raised questions about the discrepancies in their descriptions of Ortiz's assailant. The trial judge then instructed the jury on identification in accordance with *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979). The judge gave detailed instructions on "whether the witness had had occasion to see or know the witness in the past . . . whether he is truthful, and . . . whether he had the capacity and opportunity to make a reliable observation of the matter covered in his testimony." Yet, because he denied the defendant's request for a "good faith error" instruction, the jury were never explicitly given the choice to conclude that Fuller and Ortiz did not lie, but were honestly mistaken in their identification of the defendant. See *Commonwealth* v. *DiFonzo*, 31 Mass. App. Ct. 921, 922 (1991) (omission of requested instruction on honest but mistaken identification may have prevented the jury's consideration of good faith error apart from the issue of witness credibility). See also *Commonwealth* v. *A Juvenile*, 22 Mass. App. Ct. 905, 906

---

[5]Fuller, however, testified at trial that he was asked to identify the defendant at the lineup, not to identify Ortiz's assailant.

(1986) (refusal to instruct jury, as requested, on possibility of honest but mistaken identification was error given inconsistencies between victim's prior description of his assailant and his trial testimony, and discrepancies and inconsistencies between and among descriptions given by other witnesses in their trial and prior testimony).

"Fairness to [the] defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it." *Commonwealth* v. *Pressley*, 390 Mass. at 620. Moreover, this instruction assumes "particular importance whenever there is a question of possible mistaken identity and the defendant takes the stand to testify to an alibi or asserts an alibi through other witnesses called in his behalf." *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738, 743 (1978), *S.C.*, 378 Mass. 296 (1979). Here, the defendant's case consisted entirely of alibi testimony from his mother, Diana Spencer, and her employer, Harry Juul. The defendant's mother and her employer both testified that the defendant was at Juul's home at the time of the assault. Where the defendant not only legitimately raised and persistently pressed the issue of mistaken identification but also presented two alibi witnesses, the failure to give a *Pressley* charge "tended at least to submerge one of the crucial issues in the case, if not to rob the defendant of his defense entirely." *Commonwealth* v. *Caparrotta*, 34 Mass. App. Ct. at 476 (citations omitted). Contrast *Commonwealth* v. *Grace*, 43 Mass. App. Ct. 905, 906-907 (1997) (where no alibi defense was presented and witness observed defendant, whom he knew and recognized, from a clear unobstructed vantage point only one hundred feet away, judge did not err in denying defendant's request for honest but mistaken identification instruction).

As a result of the judge's instructions, this case was presented to the jury as a credibility contest between the Commonwealth's two identification witnesses, Fuller and Ortiz, and the defendant's two alibi witnesses, Spencer and Juul. Sufficient evidence was presented at trial, however, such that a reasonable jury could have questioned the accuracy of the testimony of either side. Under these circumstances, our case law compels the conclusion that the trial judge erred in denying the defendant's request to instruct the jury on the possibility of honest but mistaken identification. Accordingly, we reverse the judgment,

set aside the verdict, and remand the case to the Superior Court for further proceedings.

*So ordered.*