**UNITED STATES of America,**

v.

**Herman John GEBELE, a/k/a Arthur Fleishman, a/k/a Benjamin Vines, Defendant.**

**Criminal Action No. 3:00CR0007.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 13, 2000.

Jean Barrett Hudson, U.S. Attorney's Office, Charlottesville, VA, for U.S.

John Lloyd Snook, III, Snook & Haughey, P.C., Charlottesville, VA, for Herman John Gebele.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

This case comes before the court on the defendant's objections to the presentence report ("PSR"), prepared by the United States Probation Officer for the court's review and consideration at the defendant's sentencing hearing. With his objections, the defendant concomitantly filed a motion for downward departure pursuant to sections 5K2.0 and 5H1.4 of the United States Sentencing Commission Guidelines Manual. For the reasons stated at the hearing and in this memorandum opinion, the court shall overrule the defendant's objections, and deny his motion for downward departure.

### I.

The defendant previously was a German citizen who lawfully entered the United States in 1951. On November 21, 1957—when he was seventeen years, eleven months old—the defendant was convicted of Assault and Battery by Means of a Dangerous Weapon, in Suffolk Superior Court, Boston, Massachusetts. As a result, he was deported back to Germany on March 18, 1959. The defendant subsequently moved to Canada, and applied for legal reentry into the United States. Although he never received permission to do so, he reentered the United States on or before September 13, 1999. Reentering the United States without permission after having been deported violates 8 U.S.C. § 1326(a)(2)(A). The defendant was charged as an illegal alien under that section, and he pled guilty on April 21, 2000.

The defendant filed two sets of objections to the PSR, one on June 16, 2000, and another on August 29, 2000. With his first set of objections he also filed a motion for downward departure. The majority of his objections concern the PSR's recommendation that he receive a 16–point enhancement due to his prior conviction as a juvenile for Assault and Battery by Means of a Dangerous Weapon. A 16–point enhancement is permitted in illegal reentry cases if the defendant originally was deported following an "aggravated felony" conviction.

In his first set of objections, the defendant argues: (1) a juvenile conviction is not an "aggravated felony"; (2) even if it is an aggravated felony, the court should downward depart since the circumstances of this case are so unique as to take the

case outside the applicable guideline's "heartland"; (3) the references in the PSR to the fact that the defendant was a suspect in a capital murder investigation should be excised; and (4) downward departure is warranted because of his physical infirmity. In his second set of objections, he argues: (5) under a recent line of cases from the United States Supreme Court, including *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the juvenile conviction cannot be used to increase the two-year statutory maximum for illegal reentry cases; (6) an enhancement is not proper in this case because it is unclear whether the defendant had procedural due process when he was convicted as a juvenile; and (7) an enhancement is not warranted because the United States failed to file an information stating that it intended to rely upon a prior conviction at sentencing. His objections and grounds for departure shall be discussed in this order.

## II.

### A.

■ The defendant first objects that because he was a juvenile when convicted of Assault and Battery by Means of a Dangerous Weapon, that conviction should not be considered an "aggravated felony" under the applicable sentencing guideline, which provides for a 16–point enhancement "[i]f the defendant was deported after a criminal conviction ... [and] the conviction was for an aggravated felony." USSG § 2L1.2(b)(1)(A) (1998). The defendant argues that the Sentencing Commission did not intend juvenile convictions to constitute "conviction[s] ... for an aggravated felony" under Chapter 2, because the Guidelines specifically discuss juvenile convictions in Chapter 4 ("Criminal History"), but not in Chapter 2 ("Offense Conduct").

The defendant's argument is without merit. Nothing in the Guidelines limits the applicability of § 2L1.2 to adult convictions, and the defendant's past conviction falls squarely within that guideline's definition of "aggravated felony." As used in § 2L1.2, "aggravated felony" "is defined at 8 U.S.C. § 1101(a)(43)." USSG § 2L1.2, Application Note 1 (1998). 8 U.S.C. § 1101(a)(43) provides, in relevant part: "The term 'aggravated felony' means ... a crime of violence (as defined in section 16 of Title 18) ... for which the term of imprisonment [is] at least one year." 8 U.S.C.A. § 1101(a)(43)(F) (West 1999). A crime of violence is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or ... any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.A. § 16 (West 2000). "The term applies to an offense ... whether in violation of Federal or State law...." 8 U.S.C.A. § 1101(a)(43) (West 1999). The state law conviction for Assault and Battery by Means of a Dangerous Weapon clearly was a "crime of violence" under 18 U.S.C. § 16(b); by its nature, it involved "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C.A. § 16 (West 2000). The defendant's term of imprisonment for that crime having been five years and one day (*i.e.*, in excess of one year), his underlying offense constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43).

No case has discussed whether an offense committed while a juvenile may be considered an "aggravated felony" for the purposes of 8 U.S.C. § 1101. However, the statutory definition of "aggravated felony" does not distinguish between juveniles and adults, and the absence of any distinction in the statute indicates that Congress did not intend to distinguish between aggravated felonies committed by an adult and those committed by a juvenile. The defendant's juvenile conviction falls within the plain language of the stat-

ute, and thus must be considered an "aggravated felony" under 8 U.S.C. § 1101.

While statutory interpretation alone provides a sufficient basis for overruling the defendant's objection, the United States points out that the defendant's juvenile conviction also should be considered an "aggravated felony" under an analogous case from the Fourth Circuit Court of Appeals. In *United States v. Lender*, 985 F.2d 151 (4th Cir.1993), the defendant was given a sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), because he previously was convicted of three "violent felonies." The defendant objected that an enhancement was not warranted because he was a juvenile when convicted of one of those prior offenses. The court examined the statutory language, which defined "violent felony" in the disjunctive, as either "(1) a 'crime punishable by imprisonment for a term exceeding one year,' or (2) an 'act of juvenile delinquency' that involves certain characteristics, provided that the crime or juvenile act meets other criteria not at issue here." *Id.* at 155. The court held that the first factor included offenses committed as an adult or as a juvenile, as long as the defendant was prosecuted as an adult. As the defendant had been prosecuted as an adult, his "juvenile" conviction was found to be a "violent felony" under the statute.

Although not directly analogous because it interpreted a different statute, the *Lender* case indicates that a juvenile conviction should be considered an "aggravated felony" if a state prosecutes a defendant as an adult. From documents obtained by the United States from the Massachusetts court system, it appears that the defendant was tried as an adult in the Suffolk County Superior Court, and not as a juvenile in Juvenile Court. *See generally Commonwealth v. Spencer*, 45 Mass.App. Ct. 33, 695 N.E.2d 677, 679 (1998) (distinguishing between adult and juvenile convictions in Massachusetts, noting that "[a] judge has wide discretion in determining whether a juvenile should remain within

the juvenile system or be tried as an adult [in Superior Court] .... [depending on factors such as] the juvenile's dangerousness and amenability to rehabilitation."). Under *Lender*, the defendant's juvenile conviction should be considered an "aggravated felony" for the purposes of 8 U.S.C. § 1101, because he in fact was prosecuted as an adult for an offense that otherwise would constitute an aggravated felony for the purposes of § 1101. Accordingly, the defendant's first objection shall be overruled.

**B.**

■ Next, the defendant argues that even if the conviction is an aggravated felony under USSG § 2L1.2(b)(1)(A), a downward departure is merited in this case because "a 16–point enhancement for a crime committed 40 years ago while a juvenile, while perhaps permitted under the strict terms of the Guideline, greatly overstates the seriousness of Mr. Gebele's prior offense and of his dangerousness to society." (Def.'s 1st Objs. at 4.) The defendant's juvenile conviction occurred when he was seventeen years old, and he currently is sixty years old. He asserts that these circumstances are so unique as to make this case fall outside the "heartland" of cases covered by the applicable guideline, in this case USSG § 2L1.2. *See United States v. Rybicki*, 96 F.3d 754, 757 (4th Cir.1996) (holding that the court may depart from the Guidelines, but only if the circumstances of the case are so unique or atypical as to fall outside the "heartland" of the applicable guideline).

An analysis of the case law reveals that none of the factors cited by the defendant potentially remove this case from the heartland of § 2L1.2, and that, on the contrary, this case falls squarely within the heartland, as a matter of law. Application Note 5 of § 2L1.2 sets forth specific criteria that warrant a downward departure from the 16–point enhancement:

Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies,

and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

USSG § 2L1.2, Application Note 5 (1998). Three very recent cases from the Second, Fifth, and Tenth Circuits have held that Application Note 5 defines the heartland of § 2L1.2 *by exclusion,* such that a downward departure from the 16–point enhancement is authorized *only if* the defendant satisfies the three criteria enumerated in Application Note 5.[1] *See United States v. Tappin,* 205 F.3d 536, 540–41 (2d Cir.2000) ("The Sentencing Commission stated explicitly that departure . . . may be appropriate when a defendant meets all three enumerated criteria in the Note. By necessary implication, . . . [the] Commission intended that all other cases . . . should be treated as within the heartland of illegal reentry cases."); *United States v. Yanez–Huerta,* 207 F.3d 746, 750 (5th Cir.2000) ("Because a § 5K2.0 departure would have been based on factors already taken into account by § 2L1.2, the district court properly addressed the appropriateness of a downward departure solely under the criteria set forth in the latter provision."); *United States v. Marquez–Gallegos,* 217 F.3d 1267 (10th Cir. 2000) (agreeing with the reasoning of the Second Circuit, and adding, "to hold otherwise would . . . second-guess the conscious policy choices of Congress and the Sentencing Commission, an activity in which we are not at liberty to engage.").

Under these cases, the instant case falls *within* the heartland of illegal reentry cases under § 2L1.2 because the defendant does not satisfy two of the three criteria enumerated in Application Note 5:(1) his juvenile conviction was a crime of violence under 18 U.S.C. § 16, and (2) he was sentenced to five years' imprisonment. As the court only may downward depart if the circumstances of the case fall *outside* the heartland, the court does not have authority to downward depart in this case. Accordingly, the defendant's motion on this ground shall be denied.

The defendant bases his argument principally on *United States v. Maul–Valverde,* 10 F.3d 544, 547 (8th Cir.1993), a case in which the Eighth Circuit hypothesized that departure pursuant to USSG § 5K2.0 may be warranted in circumstances similar to the case at bar.[2] However, the Eighth Circuit does not subscribe to the aforementioned view that Application Note 5 defines the heartland by exclusion. *See United States v. Diaz–Diaz,* 135 F.3d 572 (8th Cir.1998) (permitting downward departure even though the defendant did not satisfy the three criteria of Application Note 5). The court finds the logic and reasoning of the cases from the Second, Fifth, and Tenth Circuits more persuasive than those from the Eighth Circuit. By commenting that the circumstances that trigger the 16–point enhancement "vary widely," the Sentencing Commission recognized that unusual circumstances may arise in illegal reentry cases, but nonetheless decided to limit the grounds for departure to the very specific circumstances described in Application Note 5. It follows

---

1. The Fourth Circuit has not addressed whether Application Note 5 defines the "heartland" of § 2L1.2 cases by exclusion.

2. The Eighth Circuit noted in dicta:
   [A] departure . . . might be appropriate due to the impact of a § 2L1.2(b)(2) enhancement on the Guidelines range sentence in an unusual case. For example, § 2L1.2(b)(2) would presumably apply to a sixty-year old man who illegally reenters the United States to live with his only son, who was deported forty years previously after an aggravated felony conviction, and who has remained out of the country for the entire forty years. If the purposes underlying the sixteen-level enhancement would not be served by applying it in this situation, a downward departure could be warranted.
   *Maul–Valverde,* 10 F.3d at 547.

that any situation that does not satisfy the Application Note 5 criteria falls within the heartland of USSG § 2L1.2.

■ Even if the court could depart downward as the defendant suggests, the United States correctly observes that the hypothetical described by the Eighth Circuit in *Maul–Valverde* is distinguishable. The defendant in this case did not recently reenter the United States for the first time. He has been in the United States possibly since 1994, and probably longer. He repeatedly left and reentered the United States using false passports and assumed names. Far from quietly taking up a residence in North Carolina to visit his only son or a sick relative, the defendant was arrested twice in two different states (for petty theft in California, and for making false statements in connection with a passport application, in Massachusetts), and he was a suspect in a capital murder investigation in the Western District of Virginia. The court therefore would not find that the circumstances of this case fall outside the heartland of the applicable guideline, even if it had the authority to do so.

### C.

■ The defendant also objects that the PSR's references to certain murders for which he was investigated should not be used in setting a sentence because "[t]here is no basis in fact for any connection to be made between Herman Gebele and the murders...." (Def.'s 1st Objs. at 8.) He further requests that the references be excised, because the PSR will follow the defendant into prison and the references may induce the Bureau of Prisons to place him in a more restrictive institution than is necessary or appropriate. As the inclusion of the information does not affect the guidelines calculations, the defendant apparently only objects due to the potential

effect the references may have on the Bureau of Prisons.

■ Rule 32(b) of the Federal Rules of Criminal Procedure "requires the probation service to fully investigate defendants and provide as complete a profile as possible in the presentence report. This rule even permits a presentence report to include information about crimes for which a defendant was indicted but not convicted." *United States v. Legrano*, 659 F.2d 17, 18 (4th Cir.1981) (holding the district court did not err in refusing to excise information in presentence report that might jeopardize the defendant's parole possibilities);[3] *see also United States v. Hunter*, 19 F.3d 895, 897 (4th Cir.1994) (Hall, J. concurring) ("The sentence can be based on all manner of other 'relevant' criminal conduct, uncharged or even charged and acquitted."). The probation officer asserts that he attempted to provide the court with the chronological order of events which led to the defendant's arrest for the instant offense, observing that the Immigration and Naturalization Service initiated its illegal reentry investigation while the defendant was held without bond for the homicides. The probation officer also correctly notes that the PSR "clearly reveals that the ... charges were dismissed." (PSR, Response to Obj. 3.)

The court shall overrule the defendant's objection, because the references to the murders provide a relevant factual background for the present offense. The court accordingly shall not excise the references to the murders from the PSR. Even so, a defendant is presumed to be innocent of a crime until his guilt is proven beyond a reasonable doubt. The murder charges having been dropped, the court presumes that the defendant is innocent of any wrongdoing in connection with the murders, and shall not take the murders into account in imposing the defendant's sen-

3. The court notes for clarity that *Legrano* cited Rule 32(c), which now corresponds to Rule 32(b). *See* Fed.R.Crim.P. 32 advisory committee's note, 1994 Amendments (noting that subdivision (b) was "formerly subdivision (c)").

tence for any purpose other than factual background.

### D.

■ The defendant also argues that his poor health merits downward departure. He asserts that, because he will be deported upon release, it would be more efficient to permit him to retain his own doctors as a citizen of Canada than to require the Bureau of Prisons to pay for what may be significant medical expenses.

USSG § 5H1.4 permits a downward departure for "an extraordinary physical impairment ... e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." The defendant moved for and received a continuance of his sentencing hearing so that he could be examined at the University of Virginia. He was seen by Drs. Didden and Ballew on August 17, 2000. They indicated that the defendant's physical condition is not as severe as even his own counsel previously believed. The defendant's weight loss, nausea, and vomiting appear to due to "gastritis, and not due to a recurrence of his colon cancer." The doctors also indicated that "his urinary symptoms are not due to prostrate cancer," and that his back pain and anemia were treatable by the institutional physician. The defendant's ailments accordingly do not amount to "extraordinary physical impairment[s]" that warrant departure. Therefore, the objection shall be overruled.

### E.

■ The statute to which the defendant pled guilty, 8 U.S.C. § 1326(a), provides for a maximum penalty of two years' imprisonment. The PSR recommends a sentence of forty-six months (three years, ten months), based on the provision for enhancement if the defendant originally was deported following an "aggravated felony" conviction. *See* USSG § 2L1.2(b)(1)(A) (1998). The defendant argues that his sentence cannot be increased above the prescribed two-year maximum penalty if the United States did not allege the fact of his aggravated felony in the indictment.

A case from the United States Supreme Court applies directly to the circumstances of the case at bar. In *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Court addressed whether an indictment charging an alien with illegal reentry under 8 U.S.C. § 1326(a) must set forth the fact that the defendant previously was convicted of an aggravated felony for the defendant to be exposed to an "aggravated felony" sentencing enhancement. The Court held that the prior commission of an aggravated felony is a sentencing factor, not an element of a § 1326 offense, and that the indictment did not need to set forth the fact that the defendant previously was convicted of an aggravated felony.

The defendant recognizes *Almendarez–Torres*'s holding, but argues that "three subsequent Supreme Court cases have so undermined *Almendarez–Torres* that it cannot be regarded as good law anymore." (Def.'s 2d Objs. at 2 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000), *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999))). The defendant's basis for asserting that *Almendarez–Torres* effectively has been overruled is that "Five members of the Court have stated in the last two years that *Almendarez–Torres* was wrongly decided ... If *Almendarez–Torres* was to come before the Court today, it seems highly likely that the Court would hold that the allegation that the defendant had been convicted of an aggravated felony is an element of the offense." (Def.'s 2d Objs. at 6.)

The defendant's argument fails for two reasons. First, the Supreme Court expressly declined to overrule *Almendarez–Torres*, in *Apprendi*: "Even though it is arguable that *Almendarez–Torres* was in-

correctly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset." *Apprendi,* 530 U.S. at —, 120 S.Ct. at 2362 (footnote omitted). *Almendarez–Torres* still is controlling law; the court is not permitted to ignore it by "counting Justices," or by speculating about what the Supreme Court might do in the future. Second, *Apprendi* specifically exempted recidivism from its holding: "*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63 (emphasis added). Therefore, the defendant's objection shall be overruled.

### F.

■ Next, the defendant argues that the logic underlying the decision to except recidivism in both *Almendarez–Torres* and *Apprendi* was that procedural protections accompanied the original conviction, and thus ensured that the defendant had been fairly convicted of the earlier offense. *See Apprendi,* 530 U.S. at —, 120 S.Ct. at 2362 ("Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez–Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range."). In this case, the defendant's original Assault and Battery conviction occurred in 1957, prior to a myriad of Supreme Court cases that made the Fifth Amendment's due process guarantees applicable to the states. The defendant does not assert that he actually was denied due process as a juvenile; he simply argues

that no one knows whether he received due process.

■ The United States obtained several documents from the Massachusetts court system which indicate that the defendant was not denied due process when he was convicted of Assault and Battery by Means of a Dangerous Weapon in 1957. Of particular note is the certified conviction order, reflecting that the defendant was convicted following a trial over which a Superior Court Judge presided. Further, the Superior Court docket entries show that the defendant was represented by counsel. Although the defendant opined at oral argument that the trial in that case might have been a bench trial, and the defendant does not recall waiving his right to a jury trial, a conviction in a court of competent jurisdiction carries with it a presumption that due process was provided. *See generally* 28 U.S.C. § 2254(e)(1) (West Supp.2000) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."); *Voorhees v. Jackson,* 35 U.S. (10 Pet.) 449, 472, 9 L.Ed. 490 (1836) (observing that "[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears"). The defendant has presented no evidence to the contrary. Therefore, as a factual matter, the defendant's objection must be overruled.

■ The defendant's argument also fails as a matter of law. In *Apprendi,* the Supreme Court indicated that procedural protections mitigated the constitutional concerns of having a judge—as opposed to the jury—find the fact of the defendant's prior conviction. The defendant's instant objection does not assert that the jury should have found the fact of his prior conviction; like the defendant in *Almendarez–Torres,* the defendant in this case does not challenge the fact of his prior conviction, and does not even allege that he was denied due process at that time. When reduced to its essence, the defendant's ar-

gument is that *no* factfinder should be permitted to find the fact of a prior conviction to enhance an illegal reentry sentence when that prior conviction is so ancient as to outdate the Supreme Court cases that ensured procedural due process in state court proceedings. However, the Fourth Circuit has stated unequivocally that "[i]n considering a sentence under § 2L1.2(b)(2), *all* prior aggravating felonies, *no matter how ancient,* are to be counted." *United States v. Campbell,* 94 F.3d 125, 128 (4th Cir.1996) (emphasis added). The applicable guideline's Application Note mirrors this holding: " 'Aggravated felony,' is defined . . . without regard to the date of conviction of the aggravated felony." USSG § 2L1.2, Application Note 1 (1998). In essence, the defendant asks the court to read an exception into USSG § 2L1.2 based on the ancientness of the original conviction. Neither the Guidelines, the statute, nor the Supreme Court have prescribed or recognized such an exception. Moreover, as discussed above, this case falls within the heartland of USSG § 2L1.2, as the defendant does not satisfy the three criteria of Application Note 5. Therefore, the defendant's objection shall be overruled.

### G.

▮ Last, the defendant argues that the original Assault and Battery conviction cannot be used to increase his sentence, because the United States failed to comply with 21 U.S.C. § 851(a), which provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

As the United States did not file an information in this case, the defendant argues that no enhancement is permissible.

The defendant's argument fails because § 851(a) only applies, by definition, to "this part," *i.e.* Part D ("Offenses and Penalties") of Subchapter I ("Control and Enforcement") of Chapter 13 ("Drug Abuse Prevention and Control"). In other words, § 851(a) only applies when the defendant is convicted of a drug crime. In the case at bar, the defendant pled guilty to 8 U.S.C. § 1326(a), the crime of illegal reentry. Therefore, 21 U.S.C. § 851(a) does not apply, and the objection shall be overruled.

### III.

For the reasons discussed above, the court does not find persuasive the defendant's objections to the PSR, or his arguments for downward departure. The court accordingly shall overrule those objections, and deny the defendant's motion for downward departure.

An appropriate Order this day shall issue.

### *ORDER*

Upon consideration of the defendant's "Objections to Presentence Report and Motion for Downward Departure," filed June 16, 2000, and the defendant's "Second Objection to Presentence Report," filed August 29, 2000, and the United States's responses thereto; having heard oral argument by counsel at the sentencing hearing; and for the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

ADJUDGED, ORDERED, AND DECREED

as follows:

1. The defendant's "Objections to Presentence Report," filed June 16, 2000, shall be, and they hereby are, OVERRULED;

2. The defendant's "Motion for Downward Departure," filed June 16, 2000, shall be, and it hereby is, DENIED;

3. The defendant's "Second Objection to Presentence Report," filed August 29, 2000, shall be, and it hereby is, OVERRULED.