COMMONWEALTH *vs.* ODELLE WILLIAMS.

No. 01-P-1249.

Hampden. January 14, 2003. - May 15, 2003.

Present: LENK, CYPHER, & MILLS, JJ.

*Controlled Substances. Narcotic Drugs. Identification. Evidence,* Identification.
*Practice, Criminal,* Instructions to jury, Motion to suppress, Identification
of defendant in courtroom.

This court reversed the conviction of a defendant charged with unlawful
distribution of cocaine where, under the circumstances of the case, the
judge erred in failing to give an instruction on the possibility of an honest
but mistaken identification, which error was prejudicial, given that the
evidence against the defendant was not overwhelming and identity was the
sole contested issue. [141-143]
This court was unable to resolve the issue whether the judge at a criminal trial
erred in denying the defendant's motion to suppress a police officer's
photographic identification of her, where the judge did not make findings
of fact. [143-144]
This court was unable to resolve a claim by a criminal defendant that a police
officer's examination of a photograph viewed by another officer constituted
an improper identification of the defendant or that it tainted the first of-
ficer's subsequent in-court identification, because of the lack of a record
on which to decide the issue; however, the court saw no basis in the record
to suggest that the prosecution withheld information concerning identifica-
tion procedures. [144-146]

INDICTMENT found and returned in the Superior Court Depart-
ment on May 20, 1999.

A pretrial motion to suppress evidence was heard by *Peter A.
Velis,* J., and the case was tried before him.

*Frederic G. Bartmon* for the defendant.

*Marcia B. Julian,* Assistant District Attorney, for the
Commonwealth.

CYPHER, J. A Superior Court jury convicted the defendant,
Odelle Williams, of unlawful distribution of cocaine. G. L.
c. 94C, § 32A. The Commonwealth's case depended upon

the identification of the defendant by two Springfield police officers. The theory of the defense was that the officers had made honest, but mistaken, identifications. On appeal, the defendant claims error in the omission of a jury instruction on good faith but mistaken identification and in the admission of the identification evidence.

We reverse the conviction because, in the circumstances, the defendant was entitled to a jury instruction on good faith but mistaken identification. For the reasons stated below, we do not decide the defendant's claims concerning the admission of the identification evidence but, instead, address issues that might arise on remand.

1. *Background.* The jury could have found the following facts. On January 18, 1999, Springfield police Officer Felix Aguirre was working undercover to purchase drugs. Officer Aguirre called a pager number. An unidentified male caller returned Officer Aguirre's page and told him to meet the caller in a Walgreen's parking lot. The caller told Officer Aguirre that he would call him back with a time for the meeting. Officer Aguirre then received a call from an unidentified female who informed Officer Aguirre that she would meet him at the Walgreen's parking lot and that she would be driving a gray Oldsmobile Alero automobile.

Lieutenant Charles Cook went to the Walgreen's parking lot in order to set up surveillance. When Lieutenant Cook saw the gray Alero, he radioed Officer Aguirre and informed him that the vehicle had arrived. Officer Aguirre then drove to the lot and parked beside the Alero.

A woman inside the Alero motioned for Officer Aguirre to enter. Inside the vehicle, Officer Aguirre had an unobstructed view of the woman and was able to observe her for several minutes. The woman sold Officer Aguirre "crack" cocaine for $20. Officer Aguirre asked the woman whom he should contact if he wanted to purchase more cocaine. She told him to "ask for Odelle." Officer Aguirre exited the vehicle and headed back to the station.

Lieutenant Cook remained behind and watched the woman exit the vehicle and enter Walgreen's. Lieutenant Cook fol-

lowed her after she left the store. She was not arrested or identified that day.

Back at the station, Officer Aguirre looked through photographs kept by the Springfield police department in an attempt to identify "Odelle," but he did not see her. He asked fellow officers if they knew the identity of a woman known as "Odelle." He did not describe her to any of the officers, and he did not describe her in his police report. About five weeks later, Detective Devon Williams showed Officer Aguirre a single Polaroid photograph. Officer Aguirre stated that the picture depicted "Odelle," the woman who had sold him cocaine in the Walgreen's parking lot. Officer Aguirre did not know that Odelle had been arrested on an unrelated charge.

2. *Good faith but mistaken identification instruction.* The defendant requested a jury instruction on good faith but mistaken identification. The judge declined to give the instruction, and the defendant objected.[1] The judge instructed the jury on identification in accordance with *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310 & n.1 (1979).

An instruction on the possibility of an honest but mistaken identification should be given "when the facts permit it and when the defendant requests it." *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983). In deciding whether the judge should have given the instruction, "we assume the version of the facts most favorable to the defendant." *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. 33, 38 (1998).

The cocaine sale took place at about 7:00 P.M. on January 18, 1999. It was dark, but there were lights in the parking lot. Officer Aguirre and Lieutenant Cook never described "Odelle," and they did not know her. Officer Aguirre did not identify the defendant as "Odelle" until five weeks later, from a single photograph. The theory of the defense was that the officers had made good faith, but mistaken, identifications. We conclude that, in these circumstances, it was error to decline to give the requested *Pressley* instruction.

---

[1]At trial, the Commonwealth expressed no opinion about the requested instruction. As the defendant is entitled to such an instruction when it is requested and it is warranted by the facts, the Commonwealth would best serve its interests by expressing support for the instruction.

We consider whether the error was prejudicial. "An error is not prejudicial only if the Commonwealth can show 'with fair assurance . . . that the judgment was not substantially swayed' by it." *Commonwealth* v. *Rosado*, 428 Mass. 76, 79 (1998), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

The evidence against the defendant was not overwhelming, and identity was the sole contested issue. See *Commonwealth* v. *Williams*, 54 Mass. App. Ct. 236, 243-244 (2002) (omission of good faith but mistaken identification instruction was prejudicial where evidence was not overwhelming and sole contested issue was identity of defendant). Contrast *Commonwealth* v. *Odware*, 429 Mass. 231, 237 (1999) (omission of good faith but mistaken identification instruction not prejudicial in light of overwhelming evidence against defendant, including his own statements); *Commonwealth* v. *Pickens*, 57 Mass. App. Ct. 926, 926-927 (2003) (same). Additionally, the cocaine purchase occurred at night, and Officer Aguirre did not make an identification until five weeks later. Contrast *Commonwealth* v. *Rosado*, 428 Mass. at 80-81 (omission of *Pressley* instruction was not prejudicial where identification was made shortly after observation, corroborating physical evidence was found on defendant's person, and defendant's alibi was implausible).

The Commonwealth argues that the omission of the instruction did not create prejudicial error because the issue was squarely placed before the jury by the defendant's cross-examination and closing argument and by the *Rodriguez* charge.[2] Having considered the instruction as a whole, we conclude that it did not adequately convey to the jury the possibility that the officers' identifications of the defendant were in good faith but mistaken. Compare *Commonwealth* v. *Williams*, 54 Mass. App. Ct. at 242 (in characterizing *Rodriguez*, court observed that "generic commentary on witness credibility was insufficient to

---

[2]The Commonwealth also points out that the good faith but mistaken identification instruction takes on particular importance when a defendant offers an alibi defense, which was not the case here. Although we have observed that an instruction on good faith but mistaken identification is particularly appropriate where a defendant offers an alibi defense, *Commonwealth* v. *Caparrotta*, 34 Mass. App. Ct. 473, 476 (1993), we have never held that such a defense is a predicate to giving the instruction.

alert jury that witness may have made good faith error in identification"). In these circumstances, the jury should have been given the choice to conclude that the police officers had not lied, but were honestly mistaken in their identifications of the defendant. *Commonwealth* v. *Spencer*, 45 Mass. App. Ct. at 39. We cannot be confident that the conclusion would have been the same had the jury been instructed on the possibility of good faith but mistaken identification.

3. *Denial of the motion to suppress evidence of identification.* The defendant contends that the judge erred in denying her motion to suppress Officer Aguirre's photographic identification of her. She maintains that the identification was the product of a procedure which was unnecessarily suggestive and conducive to irreparable mistaken identification. Specifically, she points out that Officer Aguirre did not describe "Odelle's" age, skin tone, hairstyle, eye color, height, weight, or clothing, and that he observed her at night for a short period of time. According to the defendant, this lack of description, coupled with the fact that Officer Aguirre had told his fellow officers that he was try-ing to identify a black woman named Odelle and was shown, five weeks later, a single photograph of a an African-American female, renders the procedure unnecessarily suggestive. The defendant further argues that the Commonwealth did not adequately demonstrate that Officer Aguirre's in-court identifica-tion derived from a source independent of the tainted photo-graphic identification.

The Commonwealth responds that Officer Aguirre's identifi-cation from a single photograph was not unnecessarily sugges-tive, but that, even if it were, the in-court identification was based on an independent source. The Commonwealth points out that Officer Aguirre had an excellent opportunity to see "Odelle" when he purchased the cocaine from her, the photograph that was shown to him was not marked in any way, and Officer Aguirre did not know that the woman depicted in the photograph had just been arrested. The Commonwealth also urges us to recognize a distinction between identifications made by lay witnesses and those made by police officers.

When reviewing a judge's action on a motion to suppress, we accept the subsidiary findings of fact absent clear error. "A

judge's legal conclusion, however 'is a matter for review . . . particularly where the conclusion is of constitutional dimensions.' *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978)." *Commonwealth* v. *Evans*, 436 Mass. 369, 372 (2002). *Commonwealth* v. *Rupp*, 57 Mass. App. Ct. 377, 381 (2003). We are unable to resolve the issue because the judge did not make findings of fact.

In denying the motion, the judge ruled that the showing of the photograph to Officer Aguirre "was not unduly suggestive, and the burden by the preponderance of the evidence to thus show has not been met." The judge's statement may perhaps be characterized as an ultimate finding or a conclusion, but it does not constitute findings of fact. The reasons for the judge's ultimate conclusion are not clearly evident from the record. In the event of a retrial, the judge should, therefore, make findings of fact.[3] *Commonwealth* v. *Mattias*, 8 Mass. App. Ct. 786, 788 (1979). See Smith, Criminal Practice and Procedure § 1347 at 773 & nn.1.5 & 1.6 (Supp. 2003).

4. *The in-court identifications.* We need not consider whether Officer Aguirre's in-court identification was independent of any taint from the allegedly suggestive identification. Should it be necessary for the judge to decide this issue at retrial, the judge should consider the factors set forth in *Commonwealth* v. *Botelho*, 369 Mass. 860, 869 (1976).[4]

The defendant claims that Lieutenant Cook's in-court identification should not have been admitted because Lieutenant

---

[3]It will then be necessary for the judge to make findings concerning whether the police had "good reason" to use the identification procedures they used. *Commonwealth* v. *Austin*, 421 Mass. 357, 361 (1995). Compare *Commonwealth* v. *Sylvia*, 57 Mass. App. Ct. 66, 69 (2003) (upholding admission of police officer's identification of defendant in conjunction with viewing booking photograph). The judge should also determine whether, and to what extent, Officer Aguirre's training and experience as a police officer has any bearing on this determination. *Commonwealth* v. *Russell*, 19 Mass. App. Ct. 940, 942 (1985). See *United States* v. *Fields*, 871 F.2d 188, 195 (1st Cir.), cert. denied, 493 U.S. 955 (1989) (court credited fact that identification witness was police officer who, it could be inferred, was aware of importance of accurate identification).

[4]The factors are: "(1) [t]he extent of the witness'[s] opportunity to observe the defendant at the time of the crime; prior errors, if any, (2) in description, (3) in identifying another person or (4) in failing to identify the defendant; (5) the receipt of other suggestions, and (6) the lapse of time between the

Cook had made an out-of-court identification that was unduly suggestive and because the Commonwealth had failed to disclose the out-of-court identification. The defendant further claims that the trial court neglected to make a finding that the in-court identification was based on an independent source.

The issue is clouded by substantial, yet avoidable, confusion between the defense attorney and the prosecutor. The confusion stems from defense counsel's failure to file pretrial discovery motions, occasioned by her late appointment to the case. The only pretrial motion filed by defense counsel was a motion to suppress the photographic identification by Officer Aguirre. Sometime before trial, because of the time constraints, the prosecutor and defense attorney discussed the case in the court house, and the prosecutor showed the defense attorney the photograph used by Officer Aguirre to identify the defendant.

During direct examination, Lieutenant Cook identified the defendant in court and testified that he could make that identification because he saw the defendant when she exited her car in the Walgreen's parking lot. Defense counsel objected and claimed that she was unfairly surprised by Lieutenant Cook's testimony because she had believed, based on her discussion with the prosecutor, that Officer Aguirre was the only identification witness.

The prosecutor's memory and understanding of the conversation differed from that of the defense attorney. According to the prosecutor, she had informed defense counsel that the surveillance officer did not see the transaction; that Officer Aguirre was the only witness to the transaction; and that he was the only witness who had participated in an identification procedure in which he identified the defendant's photograph.

The judge initially excluded the testimony, but reconsidered and allowed the testimony after the prosecutor further explained that Lieutenant Cook was not a "surprise" witness because the police report, which had been provided to the defense attorney, revealed that Lieutenant Cook had watched Officer Aguirre's meeting with the defendant from a surveillance location.

The defendant also claims that Lieutenant Cook made an

crime and the identification." *Commonwealth* v. *Botelho*, 369 Mass. at 869. *Commonwealth* v. *Johnson*, 420 Mass. 458, 464 (1995).

improper out-of-court identification of the defendant. During the sidebar discussion concerning the admissibility of Lieutenant Cook's in-court identification, the prosecutor revealed that Lieutenant Cook, in his supervisory capacity, had looked at the photograph from which Officer Aguirre had made his identification of the defendant, but that Lieutenant Cook had not viewed the photograph for purposes of making an identification of the defendant. We are left without a record on which to resolve the defendant's claim that Lieutenant Cook's examination of the photograph viewed by Officer Aguirre constituted an improper identification of the defendant or that it tainted his subsequent in-court identification.

With regard to the argument that the prosecution withheld information concerning identification procedures, we see no basis in the record to suggest that the prosecutor intentionally withheld information. In a short, undocumented conversation in the court house, the prosecutor explained the Commonwealth's identification evidence to a newly appointed defense attorney who had not filed discovery motions. It appears to have been a misunderstanding between the attorneys about their conversation.[5] The confusion in this case illustrates how important it is for defense counsel to file appropriate motions and for the prosecution to avoid reliance on casual disclosures in discharging its discovery obligations.

*Judgment reversed.*

*Verdict set aside.*

---

[5] The judge spoke with attorneys about this issue in his lobby. Nothing more appears on the record.