Ullmann, Robert L., J.
Shortly after two men fled from Lowell police detectives during an investigative stop, two detectives separately identified the defendant, Kyle Polizzotti (“Polizzotti”), as one of the men who had fled, based on a single booking photograph. Polizzotti moved to suppress the two identifications as unnecessarily suggestive and therefore in violation of his due process rights. The Court held a hearing on December 6, 2016, at which Lowell police detectives David Kew (“Detective Kew”) and Nicholas Dokos (“Detective Dokos”) testified. For the below reasons, the defendant’s motion is DENIED.
FINDINGS OF FACT
On September 24, 2015, around 11:30 p.m., Detective Kew, Detective Dokos and a third Lowell police officer were riding in an unmarked police vehicle on Perry Street in Lowell.[1] Perry Street is in a neighborhood that was known to the officers as having recently experienced repeated incidents of auto theft. Detective Kew was driving, and Detective Dokos was in the front passenger seat. Detectives Kew and Dokos were both experienced police officers who worked with the police department’s gang unit.
Detectives Kew and Dokos noticed two men around 50 yards down Perry Street circling a vehicle and looking into it. Neither man was using a key to open the car door.
As the police officers approached the two men, Detective Dokos recognized one of them as Luis Morales, a suspected gang member. Neither officer recognized the second man, Polizzotti, at that time.[2]
Detective Kew stopped the car around 5-10 feet from where the two men were standing. Detective Dokos rolled down his car window and asked Polizzotti and Morales if they would talk to him. Dokos stated that there had recently been car thefts in the area. The men’s response did not indicate that either of them had a key or authority to use the vehicle that they had been circling. Detective Dokos asked the two men where they were going. Morales said they were going to Smith Street, which is a few miles from the scene of the stop. Other conversation followed for a couple minutes.[3]
As Detective Dokos was talking to Polizzotti and Morales, Detectives Kew and Dokos both noticed that Polizzotti and Morales were “hip checking,” i.e., checking their hip area in a way that suggests possession of a firearm. Detective Dokos knew from his police work that Morales did not have a license to cany a firearm. Based upon their belief that both men had firearms, Detectives Kew and Dokos decided to exit the police vehicle. As they exited the vehicle, Polizzotti asked, “Why are you searching us?” Polizzotti and Morales then immediately began to run in opposite directions on Perry Street.
Detective Kew chased Polizzotti, and Detective Dokos chased Morales. As Polizzotti neared the end of the block, he threw a firearm onto the ground, then looked back toward Detective Kew, giving Kew a final view of Polizzotti’s face.
After pursuing Polizzotti some 50 yards and around a corner of Perry Street, Detective Kew went back to Perry Street to recover the firearm. Kew took possession of the firearm, which contained live ammunition, and a Green Bay Packers hat that had fallen off Polizzotti’s head.
Detective Dokos caught Morales. Morales took out his cell phone, and rapidly received three telephone calls. Each time, the name “Kilo” was on the cell phone screen as the caller. Detective Dokos knew “Kilo” to be Polizzotti’s street name.
Morales was arrested and taken to Lowell General Hospital. Detectives Dokos and Kew went to the hospital to interview Morales. When Detective Dokos reached the hospital, less than 30 minutes after the arrest, he viewed a booking photo of Polizzotti on his police iPad, and recognized Polizzotti as the man with Morales at the scene.
While at the hospital, within one hour of the arrest, Detective Dokos showed Detective Kew the photo of Polizzotti in order to confirm Dokos’s identification. Detective Kew said, “I think this is the guy I saw.”
There is no evidence as to when police first searched for Polizzotti. A warrant for Polizzotti’s arrest issued on September 28, 2015. He was arrested and arraigned on October 1, 2015, one week after the relevant events.
*636 RULINGS OF LAW
A. Due Process Prevents Unnecessarily Suggestive Identification Procedures.
Under article 12 of the Massachusetts Declaration of Rights,
an out-of-court eyewitness identification is not admissible where the defendant proves by a preponderance of the evidence, considering the totality of the circumstances, that the identification is so unnecessarily suggestive and conducive to irreparable misidentification that its admission would deprive the defendant of his right to due process.
Commonwealth v. Walker, 460 Mass. 590, 599 (2011), citing Commonwealth v. Johnson, 420 Mass. 458, 463-64 (1995) (emphasis added) (additional citations omitted).
“[A] one-on-one pretrial identification raises no due process concerns unless it is determined to be unnecessarily suggestive.” Commonwealth v. Austin, 421 Mass. 357, 361 (1995) (emphasis in original). Accord Commonwealth v. Crayton, 470 Mass. 228, 234-35 (2014). Police must have “good reason” for using a single photograph, show-up, or other one-on-one procedure. See Austin, 421 Mass. at 361; Crayton, 470 Mass. at 235-36. “Good reason” can include the following:
concerns for public safety; the need for efficient police investigation in the immediate aftermath of a crime; and the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track.
Austin, 421 Mass. at 362. See also Crayton, 470 Mass. at 242.
Further, even where good reason for a one-on-one identification procedure exists, “it may still be suppressed if the identification procedure so needlessly adds to the suggestiveness inherent in such an identification that it is conducive to irreparable mistaken identification.” Crayton, 470 Mass. at 236 (quotation and additional citations omitted). See also Commonwealth v. Leaster, 395 Mass. 96, 103 (1985) (promptness of identification not sufficient “if there are special elements of unfairness, indicating a desire on the part of the police to ‘stack the deck’ against the defendant”).
B. Use of a Single Booking Photograph Is Not Per Se Unnecessarily Suggestive.
1. Identifications made by civilian and police eye-witnesses.
Use of a single photograph to identify an alleged perpetrator is generally disfavored as inherently suggestive. See Commonwealth v. Martin, 447 Mass. 274, 279 (2006); Commonwealth v. Martinez, 67 Mass.App.Ct. 788, 792 (2006). However, for two distinct reasons, courts have found “good reason” for use of a single photograph or show-up in the immediate aftermath of a crime. One reason is that prompt identification furthers the goals of efficient and fair police investigation discussed supra in Crayton, Austin and other cases.
The second reason, supported by scientific research and common sense, is that prompt identifications tend to be more reliable. See Statement of the Supreme Judicial Court, Model Jury Instructions on Eyewitness Identification at 4 (November 16, 2015), citing National Research Council of the National Academies, “Identifying the Culprit: Assessing Eyewitness Identification” 15 (2014); Commonwealth v. Barnett, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977) (‘To have the witness view the suspect while his recollection or mental image of the offender is still fresh, before other images crowd in or his attempts to verbalize his impressions can themselves distort the original picture, provides the witness with good opportunity for an accurate identification”); Martinez, 67 Mass.App.Ct. at 793 (upholding use of one-on-one photographic identification by police officer, and noting “the time it would take to assemble [a photo] array could further give rise to the increased possibility that ‘other images [would] crowd in,’ ” quoting Barnett, 371 Mass. at 92). See also Supreme Judicial Court Study Group on Eyewitness Evidence: Report and Recommendations to the Justices 31-32 (July 25, 2013).
2. Additional considerations for identifications made by police officers.
Although police have investigative reasons to use one-on-one identification procedures that citizens do not have, there is no “police officer” exception to the due process ban on unnecessarily suggestive identifications. In Commonwealth v. Williams, 58 Mass.App.Ct. 139 (2003), a police officer identified the defendant around five weeks after a drug buy, based on being shown a single photo. The Appeals Court reversed the conviction because the trial judge failed to give a jury instruction on honest but mistaken identification, further stating that, on remand, the trial judge would be required to make findings “concerning whether the police had ‘good reason’ to use the identification procedures they used.” 58 Mass.App.Ct. at 144, n.3.
Police do not need exigent circumstances in order to use a one-on-one identification procedure. See Austin, 421 Mass, at 361-62. Relying on this precedent, the Appeals Court upheld a one-on-one photographic identification of the defendant by an undercover officer made within one hour after a drug buy, even though the drug transaction was part of an ongoing investigation and therefore no imminent arrest of the alleged perpetrator was contemplated. Commonwealth v. Sylvia, 57 Mass.App.Ct. 66, 68-69 (2003).
A police officer’s training and experience is one factor that courts may consider in determining whether an identification procedure was unnecessarily suggestive. See Commonwealth v. Russell, 19 Mass.App.Ct. 940, 942 (1985). However, it is unclear *637 whether an officer’s training and experience bears specifically on the existence of “good reason” to use a suggestive procedure. See Williams, 58 Mass.App.Ct. at 144, n. 3 (on remand after reversal of conviction, trial judge “should also determine whether, and to what extent, Officer Aguirre’s training and experience as a police officer has any bearing on [good reason] determination”).
C. Use of a Single Booking Photograph to Identify Polizzotti Did Not Violate Due Process, But the Second Officer’s Identification Presents a Closer Call
Detective Dokos obtained and reviewed the booking photograph of Polizzotti within 30 minutes after Morales was arrested, based on the cell phone calls from “Kilo,” which Dokos knew to be Polizzotti’s street name. Looking at Polizzotti’s booking photograph was the most efficient way of promptly ascertaining whether he was the man who had fled the scene and disposed of the firearm. This clearly constituted “good reason” for the suggestive procedure under the above-cited case law. See supra at 4-7.
Showing the booking photograph of Polizzotti to Detective Kew presents a closer call. After Detective Dokos saw calls from “Kilo” on Morales’s cell phone screen and viewed the booking photograph of Polizzotti, the detectives clearly had their lead suspect. A subsequent suggestive identification raises at least the possibility that detectives were trying to “stack the deck” against Polizzotti for prosecution purposes. In this case, however, four factors indicate that detectives had the proper motive of identifying and promptly apprehending the perpetrator of a crime. First, Detective Kew viewed the photo of Polizzotti within one hour of the relevant events. Second, the detectives were at the hospital, and there was no way for some other officer to immediately create a photo array. Third, Detective Kew’s identification of Polizzotti was equivocal, which would not have occurred if police were trying to stack the deck against him. Fourth, police obtained a warrant against Polizzotti and arrested him within one week of the offense. Based on these factors, the Court concludes that Detective Dokos had “good reason” to show a single photograph of Polizzotti to Detective Kew.
CONCLUSION AND ORDER
For the above reasons, Defendant’s Motion to Suppress Suggestive Identification (Docket #6) is DENIED.

 The officers were looking for a man against whom a warrant had issued in an unrelated matter.

 The second man is referred to herein as Polizzotti, with the understanding that Polizzotti denies being at the scene.

 There was no testimony as to the content of this additional conversation.