Commonwealth *vs.* J. C. Pressley.

Suffolk.   October 4, 1983. — December 15, 1983.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, & Lynch, JJ.

*Identification.   Practice, Criminal,* Instructions to jury.

In the circumstances, a judge's refusal at the trial of an indictment charg-
    ing unarmed robbery to instruct the jury, as requested by the defend-
    ant, on the possibility of a good faith mistake in the identification of
    the defendant by the victim, who lived across the street from the de-
    fendant, constituted reversible error.   [619-620]

Indictment found and returned in the Superior Court
Department on October 7, 1981.

The case was tried before *Garrity,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Richard Zorza* for the defendant.

*Ellen M. Donahue,* Assistant District Attorney, for the
Commonwealth.

Nolan, J.   The defendant was found guilty of unarmed
robbery (G. L. c. 265, § 19), following a trial to a jury.  He
claims error in the failure of the trial judge to instruct the
jury on the possibility of a good faith error in the victim's
identification of the defendant, and in the procedure for
sentencing adopted by the judge.  The defendant appealed
and we granted him further appellate review after the Ap-
peals Court affirmed the judgment under its summary pro-
cedure.  Appeals Court Rule 1:28, as amended, 10 Mass.
App. Ct. 942 (1980).  We reverse the conviction on the first
claim of error and, therefore, do not reach the second issue.

There was evidence that while the victim was walking to
work on July 29, 1981, about 8 A.M., the defendant ap-
proached her from behind, tried unsuccessfully to snatch

her shoulder bag and, instead, succeeded in seizing a gold chain which she was wearing. During the incident, the victim recognized the defendant as a young man who lived across the street from her. She asked him why he was robbing her and alerted him to her recognition by saying, "We're neighbors. I'm going to tell your mother. I live right across the street from you." The defendant's rejoinder was, "I don't give a . . . ." The victim estimated the struggle to be about five minutes. The defendant ran down an alley and the victim screamed. She then continued her walk to work where she notified the police of the robbery.

On returning from work that evening, the victim went to the defendant's home where she found the defendant, one of his brothers, and his mother. The victim's boy friend and another man accompanied her. She told the mother that one of her sons had robbed her that morning. The mother responded that neither of her sons would do that. The victim then pointed to the defendant and said, "Well, you're the one." The defendant and his brother replied that the defendant had been in the house all day. The victim then recanted her identification by saying that the defendant was not the person who robbed her because, as she later testified, she feared that a fight would ensue between the defendant and her boy friend.

Following this encounter in the defendant's home, and after the victim and her friends had returned to the victim's apartment, the defendant's mother went across the street to the victim's apartment to ask the victim to inform the police that her son was not the robber. The victim agreed to do so, but she never did. Within a week after the robbery, a police detective went to the victim's place of employment and showed her approximately 100 photographs of men and she picked out the defendant's photograph.

The defendant asked the judge to repeat the jury instructions in *United States* v. *Telfaire,* 469 F.2d 552, 558-559 (D.C. Cir. 1972) (except for two sentences not here material). We treated these instructions as a model charge on identification by incorporating them as an appendix to

*Commonwealth* v. *Rodriguez,* 378 Mass. 296, 310-311 (1979). The judge gave the requested instruction in substance. However, after the charge, at a bench conference, the defendant complained that the judge did not instruct on the possibility of good faith error in the victim's identification. The defendant had made no earlier request for such an instruction and the *Telfaire* charge does not directly address this problem. The defendant was prompted to seek this further instruction because in his charge earlier the judge said, "How do you decide when a witness is telling the truth and lying through his teeth? That's the issue in this case. It's that simple, again." At this bench conference, when this part of the instruction was brought to the judge's attention and defense counsel pointed out that the defendant did not contend that the victim was lying but merely mistaken, the judge declared to counsel that the "evidence in this case is only consistent with whether or not your client is lying or whether or not the victim is lying." The judge refused to modify his charge. This refusal was reversible error.

We do not suggest that in every case in which the issue of identification plays a viable role that a judge is required to give a "good faith error" instruction. There may be cases in which the parties are so well known to each other or so closely related that under sufficient lighting and with appropriate physical proximity, the identification by the victim is either true or the victim is lying. However, this is not such a case despite the victim's familiarity with the defendant and the proximity of her apartment to the defendant's. At the trial, the victim explained her earlier identification of the defendant and her subsequent disavowal of that identification on the evening of the incident. The jury was not compelled to accept her reason for repudiating her identification, i.e., to avoid a hostile confrontation between the defendant and her boy friend. The jury should have been instructed that she might have been mistaken and that she may have retreated from her earlier identification because she was no longer as certain as she had been. See *Commonwealth* v. *Bowden,* 379 Mass. 472, 483 (1980).

Identification was crucial to the Commonwealth's case because there appears to be no evidence of the defendant's complicity independent of the identification in person and by photograph. See *United States* v. *Kavanagh,* 572 F.2d 9, 13 (1st Cir. 1978). Fairness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification when the facts permit it and when the defendant requests it. This is precisely the thrust of *Commonwealth* v. *Rodriguez, supra* at 302, where we said: "Although the judge gave detailed instructions to the jury on the subject of 'how do we decide who[m] we believe,' he failed entirely to mention that the victim might honestly have been mistaken in her identification of the defendant. This tended at least to submerge one of the crucial issues in this case, if not to rob the defendant of his defense entirely."

The failure to give this instruction at this defendant's trial was particularly prejudicial because the jury might very well have declined to conclude that the victim lied, but may have been more inclined to believe that she was honestly mistaken. See *Commonwealth* v. *Alleyne,* 10 Mass. App. Ct. 28, 31 (1980). This choice was never given to the jury. Contrast *Commonwealth* v. *Breese,* 381 Mass. 13, 18 (1980) (no danger of confusion between dishonesty and mistake as existed in *Rodriguez*).

The judgment is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*