COMMONWEALTH *vs.* JAMES M. STODDARD.

No. 94-P-335.

Suffolk. October 11, 1994. - January 13, 1995.

Present: SMITH, FINE, & IRELAND, JJ.

*Practice, Criminal,* Instructions to jury. *Identification. Armed Assault with Intent to Rob. Intent.*

At the trial of indictments alleging armed assault with intent to rob, assault and battery with a dangerous weapon and possession of a firearm without a license, the judge correctly declined to instruct the jury on "the possibility of an honest but mistaken identification" in circumstances where the victim knew the defendant, having encountered him numerous times over a year and one-half; moreover, any error in failing to give such an instruction would have been harmless where substantial circumstantial evidence, beyond identification testimony, linked the defendant to the incident. [47-48]

At the trial of an indictment for armed assault with intent to rob, there was sufficient evidence of the defendant's specific intent to commit robbery. [48-49]

INDICTMENTS found and returned in the Superior Court Department on May 30, 1991.

The cases were tried before *Charles T. Spurlock*, J.

*Richard Abbott* for the defendant.

*Jill P. Furman*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was tried before a Superior Court jury on indictments alleging armed assault with intent to rob (G. L. c. 265, § 18[*b*]); assault and battery with a dangerous weapon (G. L. c. 265, § 15A[*b*]); and possession of a firearm without a license (G. L. c. 140, § 131). He was found guilty on each charge and was sentenced to concurrent terms of from three to five years on each charge.

On appeal, the defendant argues that: (1) the judge's failure to give a jury instruction on honest but mistaken identifi-

cation was reversible error; and (2) he was entitled to a required finding of not guilty on the charge of armed assault with intent to rob because there was no evidence of specific intent upon which a rational jury could have based its verdict.

We summarize the facts which the jury could have found. Ezz Elkelleny, the victim, was employed as a cashier at the Gallivan Boulevard Shell, a self-service gas station in the Dorchester section of Boston, where he had worked for a year and one-half. During that time, the defendant had come to the station an average of two to four times a week to purchase gasoline and to buy Parliament brand cigarettes.

At about 9 P.M. on April 20, 1991, the defendant approached the cashier's booth where Elkelleny was stationed and asked for a lottery "scratch" ticket. The defendant took the ticket and drove off. About two hours later, at 10:50 P.M., Elkelleny was closing the station. He had turned the station's outside lights off and was counting the receipts, which included $300 to $400 in cash. There was a light on inside the cashier's booth. Consistent with the practice at closing time, the booth windows had been sealed by metal covers. The glass door, however, remained uncovered. On seeing the defendant approach the booth, Elkelleny opened the door. The defendant stated, "You forgot the cigarettes" and handed Elkelleny a ten dollar bill. Elkelleny took the bill and closed the door. He reached for a pack of Parliament cigarettes and the change, opened the door and handed both to the defendant. At that point, the defendant held a gun at Elkelleny and said "Fuck you." Elkelleny pushed the defendant outside of the booth and grabbed the defendant's arm. During the struggle, the gun went off, grazing Elkelleny's finger and wounding the defendant in the thigh. The defendant fell to the ground and said that Elkelleny had shot him. The defendant then struggled to his vehicle, a truck with the lettering "Boston Public Works," and drove off. Elkelleny immediately called Boston police. A search of the area later that night failed to turn up either the defendant or the Boston public works truck. A .25 caliber semi-automatic handgun,

absent one bullet from its chamber, was recovered at the scene. Elkelleny looked at several hundred photographs in police books, but did not identify the defendant. Later, he picked the defendant out from the second of two groups of ten photographs each.

At trial, Elkelleny testified that he was familiar with the defendant as a "regular customer," who frequently bought Parliament cigarettes. On recognizing the defendant, he had opened the door to the cashier's booth — something he would not have done after closing for someone he did not know.

The Commonwealth produced evidence through other witnesses that: (1) the defendant was employed by the Boston public works department; (2) the defendant had access to a department vehicle at the time of the incident; (3) the defendant had taken several days off from his job in late April and early May, 1991, but had taken no sick time from work in the three months preceding the incident; (4) the defendant was seen limping several days after the incident by his work supervisor; and, (5) the handgun found at the scene, although bearing no fingerprints of the defendant, was registered to a longtime friend of his, Boston Police Officer Edward Shaugnessey, and was missing from Shaugnessey's possession at the time of the incident. The primary defense was mistaken identification.

In charging the jury on identification evidence, the judge gave the critical portions of the model instruction taken from *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972), and reprinted at 310-311 in *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979). (See also revised *Telfaire* instruction in *Commonwealth* v. *Cuffie*, 414 Mass. 632, 639-641 [1993].)[1] The defendant also requested — but was de-

---

[1]The defendant objected to the judge's omission from his jury instructions of certain portions of the *Telfaire* instruction. Several of the omitted passages appear to have had little or no relevance to the facts of the case. These include, for example, the point that an identification made from a group of similar individuals is often more reliable than one made by simply presenting the defendant alone to the witness; and that, when weighing identification evidence, a jury may consider a witness's previous inconsis-

nied — an instruction "on the possibility of an honest but mistaken identification," *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983). That instruction however is required only "when the facts permit it." *Ibid.* The *Pressley* court specifically noted that "[t]here may be cases in which the parties are so well known to each other or so closely related that under sufficient lighting and with appropriate physical proximity, the identification by the victim is either true or the victim is lying." *Id.* at 619.

That is the case here. The victim knew the defendant as a regular customer of the station and had encountered him numerous times over a year and one-half. Consistent with his familiarity with the defendant, the victim handed the perpetrator a pack of Parliament cigarettes and stood within a few feet or less of him during their encounter. Unlike the situation in *Pressley*, the victim never recanted his identification of the defendant as the perpetrator, and the defendant never offered an alibi. Contrast *Commonwealth* v. *Caparrotta*, 34 Mass. App. Ct. 473, 476 (1993) (special instruction is critical where question of mistaken identification exists and an alibi is asserted). Assuming, without so deciding, that the judge should have given the requested instruction, the omission was harmless error beyond a reasonable doubt because identification was not pivotal to the Commonwealth's case. There was substantial circumstantial evidence linking the defendant to the incident. See *Commonwealth* v. *Benbow*, 16 Mass. App. Ct. 970, 972 (1983).

The defendant also asserts that the Commonwealth produced no evidence of an intent to commit robbery and, therefore, he was entitled to a required finding of not guilty on the charge of armed assault with intent to rob. In reviewing this claim of error, the standard we apply is whether, taking all of the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the Commonwealth, a rational jury could have found the essential element of in-

tent identifications or a failure to make an identification. Other of the omitted passages merely re-emphasize points already included in the judge's instructions.

tent beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979); *Commonwealth* v. *Montanez*, 410 Mass. 290, 305 (1991).

As in most instances when intent is an element of the crime charged, there was no direct evidence of the defendant's actual state of mind at the time of the assault. In such situations, intent may be proven circumstantially "by inference from all the facts and circumstances developed at the trial . . . [and] [t]he inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable . . . ." *Commonwealth* v. *Stewart*, 411 Mass. 345, 350 (1991), quoting from *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980).

Applying that standard, we think there was sufficient evidence of the defendant's specific intent to commit robbery which a rational jury could permissibly infer from the total circumstances the night of April 20, 1991. The station had closed for the night and the lights had been turned off in the outside areas. Hence, it was unlikely other persons would appear at the station. The victim was counting large amounts of cash inside the lighted booth. The defendant stood immediately outside the glass door and thus could plainly observe that activity. The defendant had a gun. Notwithstanding the defendant's contention to the contrary, the jury could find that the victim tendered the change due the defendant along with the pack of cigarettes. Thus, there is no reasonable basis for concluding that the defendant may have acted out of anger or a belief that he was being cheated out of his change.

*Judgments affirmed.*