COMMONWEALTH *vs.* JOHN PICKENS. No. 01-P-19. April 10, 2003. *Identification. Evidence,* Identification, Fingerprints. *Practice, Criminal,* Instructions to jury, Deliberation of jury. *Jury and Jurors.*

On Monday, August 31, 1998, two young women, Maureen and Sandra,[1] were repeatedly raped by a man who forced his way into their studio apartment. Physical evidence left behind by the assailant included three lottery tickets, one of which contained the defendant's fingerprint. One victim identified the defendant as the assailant, and other circumstantial evidence tied him to the crime. A Superior Court jury convicted the defendant of seven offenses arising out of the attacks.[2]

1. *Identification instruction.* The defense was mistaken identification, supported by an alibi — that, while the defendant had been in Boston the weekend preceding the attack, he had returned to New York Sunday night and was there when the crimes occurred. The defendant sought the instruction relative to the possibility of honest but mistaken identification mandated, upon the defendant's request, by *Commonwealth v. Pressley*, 390 Mass. 617, 620 (1983). The instruction should have been given. This was not a case of an accusing victim and a denying defendant so well known to each other that one or the other must be lying, see *id.* at 619, or where the defendant for tactical reasons did not want such an instruction, see *Commonwealth v. Burns*, 49 Mass. App. Ct. 677, 685 (2000). Denial of a *Pressley* instruction, where sought, normally results in reversal of a conviction, despite the fact that the possibility of mistaken identification is put in the jury's focus by argument of counsel. See *Commonwealth v. Spencer*, 45 Mass. App. Ct. 33, 39 (1998); *Commonwealth v. Williams*, 54 Mass. App. Ct. 236, 244 (2002).

Nevertheless, such an error has been deemed nonprejudicial "if the Commonwealth can convince us 'with fair assurance' that that failure did not 'substantially sway[]' the outcome of the case." *Commonwealth v. Rosado*, 428 Mass. 76, 80 (1998), quoting from *Commonwealth v. Flebotte*, 417 Mass. 348, 353 (1994). We are convinced that this is such a case. Despite the rapist's instructions to the two victims not to look at his face, Sandra had caught numerous views of the rapist in various positions over the hour-long period that he terrorized her and Maureen. Moreover, they had both had an

---

[1]Pseudonyms.

[2]He was convicted on two indictments for aggravated rape, one for home invasion, two for kidnaping, one for assault and battery with a dangerous weapon, and one for armed robbery (of Sandra). He was acquitted on a second indictment for armed robbery (of Maureen).

extended, unobstructed (except for a baseball cap pulled down to obscure his upper face) view of the rapist when he first entered the apartment, spinning a story about having just moved into the apartment building and needing the landlord's telephone number.

They described the rapist as a black man, five feet, nine inches in height (possibly more), in his early thirties, with a noticeably raspy voice, and a slight southern accent. Sandra claims that she also described a scar under his left eye to the police, but the police did not record that in their reports. She described as well a moustache, though it is not certain she told the police of that detail. Sandra was shown over 400 photos in hope she would see the rapist. The defendant's photograph was not included, and she identified no one. The defendant's photograph was included in an array of eight assembled after diligent police work matched a fingerprint left on one of the lottery tickets to the defendant's right thumb print. (The match was solid, with thirty points of identification.) The array was nonsuggestive; Sandra was told that the perpetrator's photograph might or might not be in the array. Her prompt identification (confirmed some days later by line up) of the defendant, her first such identification after having viewed hundreds of photographs, coupled with the fact that the defendant's unquestioned thumb print, found on the lottery ticket left in the apartment by the rapist, in our view was unusually strong evidence that Sandra had in fact correctly identified the perpetrator of the rapes. Testimony of the manager of the store where the lottery ticket had been purchased at 6:19 P.M. two evenings before the rapes confirmed that the defendant was a sometime weekend customer of the store. The defendant also matched the general description of the rapist supplied by Sandra and Maureen to the police. In these circumstances, we conclude that the error in omitting the *Pressley* instruction could not reasonably be regarded as having changed the outcome of the trial.

2. *Fingerprint instruction.* The defendant, for the first time on appeal, argues that the judge should have instructed the jury that the presence of the defendant's fingerprints at the scene, without corroborative evidence placing him there, was insufficient to support a conviction. The defendant overstates the dearth of corroboration; the victims gave independent, consistent descriptions, and Sandra identified the defendant as the perpetrator. See *Commonwealth v. Newell*, 55 Mass. App. Ct. 119, 127 (2002). Even if the jury were to have disbelieved the identification testimony, there was testimony that the lottery tickets were not at the scene prior to the incident and that the defendant was present at the store from which the tickets were purchased around the time of the purchase. The defendant had not previously been in the victims' apartment. The defendant did not rebut any of this evidence. Thus, the possibilities of the prints being left prior to the incident or by a third party were reasonably excluded. See *Commonwealth v. Fazzino*, 27 Mass. App. Ct. 485, 487 (1989). Defendant's trial counsel did not act ineffectively in failing to request the instruction. See *Commonwealth v. Ye*, 52 Mass. App. Ct. 390, 394 (2001); *Commonwealth v. Newell, supra* at 130.

3. *Failure to excuse juror.* During trial, a juror alerted the judge that he, like Maureen (and possibly Sandra, as well), attended Boston University, an institution having more than four thousand undergraduate students per class. The juror, responding to questions put by the trial judge, did not recognize either of the victims and did not recall ever having encountered them at

school. He stated that he could remain impartial and could decide the case based solely on the evidence presented. The judge did not err by relying on these statements. *Commonwealth* v. *Grant*, 391 Mass. 645, 653 (1984).

*Judgments affirmed.*

*Richard J. Fallon* for the defendant.

*Michelle Learned*, Assistant District Attorney, for the Commonwealth.

COMMONWEALTH *vs.* TROY HARDIMAN. No. 02-P-1029. April 18, 2003. *Practice, Criminal,* Probation, Revocation of probation. *Moot Question.*

In November, 1999, the defendant pleaded guilty in Ipswich District Court to a charge of breaking and entering in the night time with intent to commit a felony, G. L. c. 266, § 16. He was sentenced to a jail term of eighteen months, six months to serve, the balance suspended until November 15, 2001, with probation. During the probationary period, he was charged with crimes in the Salem District Court and served with a notice of probation violation that alleged that he had violated probation in the Ipswich case by committing the crimes with which he was charged in Salem District Court. On April 23, 2002, the defendant was found to have violated probation, his probation was revoked, and he was ordered to serve the one-year balance of his sentence.

The defendant appeals from the order revoking his probation on the ground that the decision was based on unreliable hearsay evidence. This evidence was largely derived from the police report of a Salem police officer who had responded to a radio transmission that a car was broken into on the lot of a Texaco gasoline station. An employee of the station recognized the defendant, a former employee, as the person who got out of the car and fled.

We need not decide whether this evidence was sufficiently reliable to obviate the need for confrontation. See *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990). See also Rule 6(b) of the District Court Rules for Probation Violation Proceedings (West 2000) and commentary to Rule 6.

We allowed the Commonwealth's motion to expand the record to include the docket of the Salem District Court proceedings. The docket reflects that the defendant pleaded guilty and was convicted of two charges in connection with the Salem crimes. He was sentenced to two concurrent ninety-day terms, to be served after his Ipswich term was concluded. As of the date of this opinion, the Ipswich sentence had not yet been fully served.

Conviction of a subsequent crime, whether as a result of a guilty plea or following trial, precludes a probationer from relitigating the issue in a revocation proceeding "based on the logic that, if the wrong was proved beyond a reasonable doubt, the Commonwealth need not be compelled to prove the case again on the lesser standard of proof." *Commonwealth* v. *Holmgren*, 421 Mass. 224, 227-228 (1995). The fact that, based on his plea of guilty, the defendant was subsequently convicted of the crime for which his probation was revoked "submerges any residual negative consequences of the probation revocation." *Commonwealth* v. *Fallon*, 53 Mass. App. Ct. 473, 475 (2001). See *Commonwealth* v. *Bartos*, 57 Mass. App. Ct. 751, 755 (2003) ("we accept that a guilty plea does qualify as a *Fallon* type 'submerger' "). Any question concerning the validity of the revocation is now purely academic and we

therefore dismiss the appeal as moot. *Ibid.*

*So ordered.*

*Geoffrey F. Stone* for the defendant.
*Valerie A. DePalma*, Assistant District Attorney, for the Commonwealth.