## COMMONWEALTH *vs.* PAULINO PIRES.

Suffolk. December 2, 2008. - January 13, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & BOTSFORD, JJ.

*Practice, Criminal,* Instructions to jury. *Firearms. Evidence,* Identification, Relevancy and materiality, Joint enterprise. *Words,* "Possession."

At a criminal trial, no prejudicial error to the defendant arose from the judge's instruction to the jury on the issue of various witnesses' identification of the defendant as the perpetrator of the crime, where the instruction, while not in the specific language requested by the defendant, was sufficient, in the context of the over-all instruction, to apprise the jury on the possibility of an honest but mistaken identification. [68-71]

Statement that, in future criminal cases where the evidence so warrants and when the defendant so requests, a trial judge should include in jury instructions on the possibility of mistaken identification, as adopted in *Commonwealth* v. *Rodriguez,* 378 Mass. 296 (1979), the language set forth in *Commonwealth* v. *Pressley,* 390 Mass. 617 (1983), that a witness might be honest but mistaken in his identification of the defendant. [71-72]

A criminal defendant convicted of firearms violations failed to demonstrate that the trial judge's response to a question from the jury on the issue of possession impermissibly allowed the jury to find the defendant guilty on a theory of joint venture. [72-73]

At the trial of indictments charging firearms violations, no substantial risk of a miscarriage of justice arose from the admission in evidence of a rifle found by a police officer, where the use of the rifle was appropriately limited, where the rifle was relevant to the Commonwealth's theory of the case, and where, even without evidence of the rifle, the jury could have reasonably believed that the defendant was responsible for placing it in the location where it was found. [74]

INDICTMENT found and returned in the Superior Court Department on August 22, 2001.

The case was tried before *Elizabeth B. Donovan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*David D. McGowan,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant, Paulino Pires, was indicted on charges of possession of a large capacity feeding device, in violation of G. L. c. 269, § 10 (*m*); possession of a firearm without a license, in violation of G. L. c. 269, § 10 (*a*); and possession of ammunition without an identification card, in violation of G. L. c. 269, § 10 (*h*) (1). His first trial, in October, 2002, ended with a deadlocked jury. He was retried in December, 2002. A jury found him guilty of possession of a firearm without a license and not guilty of the other charges. He was sentenced to two and one-half years in the Suffolk County house of correction and now appeals. We granted his application for direct appellate review. We affirm the conviction.

*Background.* At approximately 12:20 A.M. on July 12, 2001, Boston police Officer Scott Roby was on routine patrol in the area of Draper and Ridgewood Streets in the Dorchester section of Boston. He saw, as he had on numerous occasions, a group of individuals gathered on the sidewalk in front of 40 Draper Street. The building is located on the corner of Draper and Ridgewood Streets and has a path or alleyway running along the side of the building leading to the rear yard. Officer Roby approached the group and, from his vehicle, told them, as he had routinely done in the past, to clear the area and go home. Officer Roby recognized the individuals in the group and knew some of them by name, including Bernadino Lopes (although he did not then know Lopes's first name) and Jelson (or Jason) DePina. He also recognized the defendant, but did not, at that point, know his name. Two other Boston police officers also on routine patrol in the area, Martin O'Malley and Deborah Flaherty, were driving on Draper Street toward Ridgewood Street at about the same time and saw Officer Roby and the group in front of 40 Draper Street.

As the group began to disperse, Officer Roby, who was still in his cruiser, turned the corner onto Ridgewood Street, a one-way street on which several cars were parked, including a Ford van or minivan. Officer Roby turned on his alley lights and observed Pires and Lopes leaving the rear yard of 40 Draper Street on to Ridgewood Street. As Pires and Lopes began walking up Ridgewood Street toward Draper Street, Officer Roby got out of his vehicle. He saw Pires "dip[], ben[d], and . . . place his hand" in the rear tire wheel well of the minivan and reach his

hand under the wheel well. Officer Roby did not see Pires's hand before he reached into the wheel well, but did see that when Pires withdrew his hand it was empty. Officer O'Malley also saw Pires "kne[el] down, ben[d] down and place[] an object to the rear of the Caravan, with his right hand" in the area of the rear right tire. When Pires bent over, his forearm down to his hand was blocked from Officer O'Malley's view by the minivan.

Officers O'Malley and Flaherty then stopped Pires and Lopes. While Officer O'Malley was with Pires, Officer Roby spoke to Lopes and told him to go home. Lopes left the scene. Officer Roby then went to the rear wheel well of the minivan where he had observed Pires place his hand, reached in, and recovered a nine millimeter handgun from the wheel well. At the same time that Officer Roby was retrieving the gun, he and Officer O'Malley both heard a noise from the rear yard of 40 Draper Street that sounded like a firearm hitting the ground. Both officers saw De-Pina in or near the rear yard. Officer O'Malley then found a "banana clip," with several rounds of ammunition inside, located underneath the rear porch, and Officer Flaherty found a rifle beside the house.

Pires and DePina were arrested and taken to the police station. At Pires's trial, Officers Roby and O'Malley both testified that most of the street lamps in the area of 40 Draper Street were illuminated, that Pires was wearing a Red Sox shirt with "Garciaparra" on the back, and that Lopes was wearing a dark colored sweatshirt or long-sleeved shirt.

*Discussion.* a. *Jury instruction.* The defendant raises three issues in his appeal. The first stems from his dissatisfaction with the judge's instruction to the jury on the issue of his identification by various witnesses as being the individual who placed the firearm in the wheel well. In *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979), this court adopted jury instructions from *United States* v. *Telfaire*, 469 F.2d 552, 558-559 (D.C. Cir. 1972), as model instructions on the issue of the possibility of mistaken identification (*Rodriguez* instruction).[1] Subsequently, in *Commonwealth* v. *Pressley*, 390 Mass. 617 (1983), we also

---

[1]The adopted instruction in *Commonwealth* v. *Rodriguez*, 378 Mass. 296 (1979) (*Rodriguez* instruction), has since been modified by both *Commonwealth*

stated that, when the facts permit it and the defendant requests it, "[f]airness to a defendant compels the trial judge to give an instruction on the possibility of an honest but mistaken identification." *Id.* at 620. The specific phrase "honest but mistaken" is not included in the *Rodriguez* instruction.

During the charge conference, the judge indicated that, on the issue of identification, she would instruct the jury that the Commonwealth had to prove the identification of the perpetrator of the crime. When the defendant asked the judge to "give a *Pressley* instruction, honest mistake," the judge said that was included. The instruction, which is set out in its entirety in the margin,[2]

v. *Cuffie*, 414 Mass. 632 (1993), and *Commonwealth* v. *Santoli*, 424 Mass. 837 (1997). Any reference herein to the *Rodriguez* instruction refers to the instruction as modified.

[2]The judge's charge to the jury on the issue of identification was as follows:

"One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Commonwealth has the burden of proving identity beyond a reasonable doubt. It's not essential that the witnesses themselves be free from doubt as to the correctness of their statements.

"However, you, the jury must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense, and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following: Are you convinced that the witness had the capacity and adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense would be affected by such matters as how long or short a time was available, how far or close the witness was, how good were the lighting conditions, whether the witness had occasion to see or know the person in the past.

"In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight. This is not necessarily so, and may

included the following sentence: "In analyzing identification testimony, you may consider whether or not the witness might simply be mistaken." The defendant argues that this sentence was not a "complete" *Pressley* instruction, and was insufficient to focus the jury's attention on what is noted at the outset of the instruction as one of the most important issues in the case — "the identification of the defendant as the perpetrator of the crime." Specifically, the defendant asked the judge at a sidebar conference following her charge to the jury to also include that "[e]ven if you find a witness is sincere and honest in [his]

---

use other senses. Are you satisfied that the identification made by the witness subject to the offense was the product of his own recollection?

"You may take into account the circumstances under which the identification was made. If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care.

"You may also consider the length of time that lapsed between the occurrence of the crime and the opportunity of the witness sometime after the occurrence of the crime to see and identify the defendant as the offender as a factor bearing on the reliability of the identification.

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

"You may take into account any occasion which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with his identification during trial.

"You must consider the credibility of each identification witness in the same way as any other witness. Consider whether he is truthful, and consider whether he had the capacity and the opportunity to make a reliable observation on the matters covered in his testimony.

"In analyzing identification testimony, you may consider whether or not the witness might simply be mistaken. The burden of proof is on the prosecutor, and that extends to every element of the crimes charged. And this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged.

"If, after examining the testimony, you have reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty."

belief the defendant committed an offense, you must still return a verdict of not guilty unless you're convinced beyond a reasonable doubt that the identification is accurate." (The judge gave no further instruction to the jury on the identification issue.) The Commonwealth, on the other hand, argues that the identification instruction adequately conveyed to the jury that they should consider the possibility of an honest mistake in the identification of the defendant as the perpetrator.

It has been suggested that our opinions in this area — regarding instructing the jury with respect to the possibility that a witness might honestly, but also mistakenly, identify a defendant as the perpetrator of a particular crime — are "unclear." See *Commonwealth* v. *Delong*, 72 Mass. App. Ct. 42, 48 (2008). We take this opportunity to clarify the matter.

The *Rodriguez* charge identifies various factors for the jury to take into account in order to determine whether a witness's identification of the defendant is accurate or whether the witness might simply have made a mistake. See, e.g., *Commonwealth* v. *Delong*, *supra* at 49 (factors for jury to consider when judging reliability of identification testimony). See also *Commonwealth* v. *Rodriguez*, *supra* at 302. The *Pressley* language, in turn, simply identifies more specifically what is intended by the *Rodriguez* instruction — that is, "the possibility of an honest but mistaken identification" of the defendant by a witness. *Commonwealth* v. *Pressley*, *supra* at 620.

The judge in this case gave the *Rodriguez* instruction to the jury. She also instructed the jury that "[i]n analyzing identification testimony, you may consider whether or not the witness might simply be mistaken." Although this was not the specific language the defendant had requested, it was sufficient, in the context of the over-all instruction, to apprise the jury on the possibility of an "honest but mistaken" identification.[3] There was no prejudicial error to the defendant in this case.

In future cases, the better course is to include in the *Rod-*

[3] A judge, of course, is not bound to instruct a jury using the exact language requested by a defendant, "so long as the charge, as a whole, adequately covers the issue." *Commonwealth* v. *DeJesus*, 71 Mass. App. Ct. 799, 808 (2008), quoting *Commonwealth* v. *Cruz*, 445 Mass. 589, 587 (2005) (use of phrase "honest mistake" sufficient *Pressley* instruction).

*riguez* instruction the language set forth in the *Pressley* case, that a witness might be "honest but mistaken" in his identification of the defendant. There is no harm in including such language, when the evidence so warrants and when a defendant requests the instruction, and it will help to ensure that the jury understand "the thrust" of the *Rodriguez* instruction — i.e., that a witness might simply be mistaken. *Commonwealth* v. *Pressley, supra.*

b. *Response to jury question.* The second issue raised by the defendant results from the judge's response to a question from the jury on the issue of possession. While deliberating, the jury asked the following question: "If someone, (A), is asked to hide an item for another person, (B), and (A) does so, does (A) possess the item?" The judge responded, "Yes. (A) has actual possession of the item. At the time that (A) takes the item from (B), (A) has actual possession. It's in (A)'s custody and control." She also added:

> "And we distinguish between actual possession and constructive possession. Constructive possession means you know where the object is, and you have the intent to exercise dominion and control over it.

> "So that's the difference between — actual possession means you have the object in your custody and control, you have it in your possession, you have it in your hand, whatever. Whereas, [constructive] possession is simply knowing where the object is with the intent to exercise dominion and control over it.

> "Now, again, remember that mere presence in the vicinity of an object, which is the subject matter of this indictment, is not sufficient to convict someone of a crime of possession of that object. So it has to be more than mere presence in the vicinity of the object."[4]

The defendant asserts that the judge's response and additional instruction allowed the jury to find him guilty on a theory of

---

[4]The judge's original instruction on the issue of possession included the following language:

> "An object or an item can be possessed either actually or constructively. So there's two ways the Commonwealth can prove the

joint venture, a theory on which the judge had refused to instruct because she did not believe that the case had been established as a joint venture.[5] The defendant did not object to the judge's response to the jury's question; therefore, our review is for any substantial risk of a miscarriage of justice. *Commonwealth* v. *Ortiz*, 408 Mass. 463, 468 (1990), citing *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

The Commonwealth argues that the judge's answer to the jury's question does not raise any possibility that the defendant was convicted on a theory of joint venture. We agree. The judge's response and additional instruction indicated, as did her original instruction, that in order to find the defendant guilty of possession of a firearm, the jury had to find that the defendant had actual or constructive possession of the firearm. Nothing in the instruction indicated that the jury should consider the elements of joint venture theory, which would have required the Commonwealth to prove beyond a reasonable doubt that "the defendant was (1) present at the scene of the crime; (2) with knowledge that another intended to commit the crime or with intent to commit a crime; and (3) by agreement was willing and available to help the other if necessary" (citations omitted). *Commonwealth* v. *Berry*, 431 Mass. 326, 330 (2000). There was no error.[6]

---

defendant guilty of possession. That he had actual possession, or he had constructive possession.

"A person possesses something if he has direct physical control or custody over it at a given time. That's what is meant by actual possession. Many of you, at this moment, have a pen in your hand. You have actual possession of that pen. You have direct physical control, at this moment, over that pen. That's what actual possession is. That's one way of proving possession. Prove it by actual possession.

"The law does not require that someone necessarily have actual physical custody of an object to possess it. An object is considered to be in a person's possession if he has the ability to exercise dominion and control over the object when he wants to. And that is what is called constructive possession.

"So, constructive possession, one can constructively possess something if they have the ability to exercise dominion and control over it, and know where the object is."

[5] During the charge conference, the Commonwealth asked the judge to instruct the jury on the theory of joint venture. The judge declined to do so.

[6] The defendant also argues that the judge's response to the jury violated

c. *Admissibility of evidence of rifle.* The defendant's final argument is that evidence of the rifle found in the yard of 40 Draper Street was improperly admitted. Although the defendant filed a motion in limine to exclude the evidence, which was denied, he failed to object at trial, and our review of this issue is therefore also for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 7 (1986).

Although the defendant's motion in limine to exclude evidence of the rifle was denied, the judge did limit the Commonwealth's use of the evidence for nonpropensity purposes only. That is, as the judge noted, in order to eliminate DePina as the source of the firearm at issue here. Officers Roby and O'Malley both testified regarding the recovery of the rifle from the yard of 40 Draper Street and to seeing DePina in the vicinity of the yard. That evidence is relevant to the Commonwealth's efforts to eliminate the other individuals who were in the area as having been responsible for placing the firearm where Officer Roby found it, in the rear wheel well of the minivan.

Relevant evidence is admissible unless it is unduly prejudicial. See, e.g., *Commonwealth* v. *Arroyo*, 442 Mass. 135, 144 (2004). The defendant argues that the evidence was prejudicial because the fact that another gun was found in the same area could have swayed the jury to what the defendant terms a "compromise verdict." Even without the evidence of the rifle, the jury could have reasonably believed that the defendant was responsible for placing the firearm in the wheel well. No substantial risk of a miscarriage of justice was created by the admission of the rifle.

*Judgment affirmed.*

Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979), because she instructed them on a theory that she had, prior to the parties' closing arguments, indicated she would not instruct on. Because we do not consider the judge's response to the jury as having allowed the jury to convict the defendant on a theory of joint venture, we find no merit in this argument.