A jury convicted the defendant of possession of heroin with intent to distribute, in violation of G. L. c. 94C, § 32(a ) ; possession of cocaine with intent to distribute in violation of G. L. c. 94C, § 32A(c ) ; and distribution of heroin in violation of G. L. c. 94C, § 32(a ).[2] On appeal, he argues that the motion judge erred in denying his motion to suppress, that he was deprived of the effective assistance of counsel, and that there was insufficient evidence to support his conviction of distribution of heroin. We affirm in part and reverse in part.
Background. We summarize the motion judge's findings of fact on the motion to suppress, supplementing where appropriate with uncontroverted testimony from the suppression hearing. Commonwealth v. Melo, 472 Mass. 278, 286 (2015). We reserve for later reference the facts relevant to the defendant's argument that the evidence presented at trial was insufficient to sustain the conviction of distribution of heroin.
On the afternoon of the defendant's arrest, a New Bedford police narcotics investigator, Detective Jonathan Lagoa, was surveilling a high crime area known for illicit drug dealing. Detective Lagoa observed a male on a red and white motorized scooter engage in what appeared to be a hand-to-hand drug transaction with a female known to the detective as a drug user named Nicole Goetz. He described the male as light-skinned, wearing a T-shirt, khaki cargo shorts, and a full face helmet. Following the transaction, the man on the scooter drove away. Lagoa issued a "be on the lookout" bulletin (BOLO) with the driver's description. Shortly thereafter, he and another officer located and arrested Goetz. Goetz was taken to the police station and admitted that she had just purchased heroin from an individual known to her as "J-Roc." A search of the recent call list on Goetz's cellular telephone (cell phone) showed that three calls were made to the contact listed as "J-Roc" immediately before the transaction.
About thirty minutes later, Detective Shane Ramos of the New Bedford police narcotics unit, responding to the BOLO, observed a male driving a red, black, and white scooter about three-quarters of a mile from the location of the alleged drug transaction. Detective Ramos signaled for the driver to stop, but the driver did not comply and drove through a stop sign. Ramos saw the driver drop an object before briefly losing sight of him. Once he regained sight of the driver, Ramos saw him take "a bunch of baggies" from his pocket and toss them into the road. Ramos also observed the driver travel in the wrong lane before eventually losing sight of him again.
Upon hearing Detective Ramos's radio broadcast of the chase, Detective Lagoa proceeded to the suspect's location. Once there, he saw a man hugging the side of a building, seemingly attempting to hide from sight. Lagoa immediately recognized this individual, the defendant, as the same person he had seen in the prior transaction with Goetz. Lagoa arrested the defendant and seized a cell phone from him. At the same time, Detective Ramos arrived at the scene and observed a red, white, and black scooter as well as a full face helmet behind the building.
Shortly thereafter, Detective Lagoa contacted New Bedford police Detective Kevin Lawless, who was with Goetz at the station, and told him to use Goetz's cell phone to initiate a call to the number associated with "J-Roc." Lagoa immediately observed the cell phone seized from the defendant begin to ring. He answered the call and confirmed the caller was Detective Lawless.
Discussion. 1. Motion to suppress. In reviewing a judge's action on "a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of the judge's ultimate findings and conclusions of law." Commonwealth v. Washington, 449 Mass. 476, 480 (2007), citing Commonwealth v. Scott, 440 Mass. 642, 646 (2004).
a. The arrest. The defendant argues that the motion judge erred in finding that police had probable cause to arrest him. "Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." Commonwealth v. Gullick, 386 Mass. 278, 283 (1982). Here, as the motion judge stated in his well-supported findings and rulings of law, the facts known to the police at the moment Detective Lagoa arrested the defendant amounted to sufficient probable cause. They included Lagoa's determination that the defendant was the same person he had observed earlier in the transaction with Goetz about three-quarters of a mile away. See Commonwealth v. Johnson, 32 Mass. App. Ct. 355, 358-359 (1992) (important factor in determining probable cause was that experienced police officers observed what they reasonably believed was a drug transaction). Moreover, at the time of the arrest, Lagoa was aware of Detective Ramos's observations of the defendant. In his attempt to stop the defendant because he matched the description of the suspect in the earlier transaction, Ramos broadcast to Lagoa that the defendant had refused to stop, had violated several traffic laws, and had discarded what appeared to be "a bunch of baggies." See Commonwealth v. Hernandez, 448 Mass. 711, 715 (2007).[3] Given the totality of these circumstances, the motion judge did not err in concluding the defendant's arrest was supported by sufficient probable cause or in denying the motion on that basis.
b. The incoming call. The defendant also argues that the motion judge erred in declining to suppress evidence resulting from the call made by the police from Goetz's cell phone to the defendant's cell phone.[4]
When the item searched is a defendant's cell phone, the United States Supreme Court has held that the possible intrusion into an individual's privacy is different "in both a quantitative and a qualitative sense from other objects ... kept on an arrestee's person." Riley v. California, 134 S. Ct. 2473, 2489 (2014). Unlike a backpack, the capacity of even the least expensive cell phones expands far beyond the physical limitations of the item itself. Ibid. This capacity to hold millions of easily accessible digital files, which range from the mundane to the intimately detailed, substantially impacts an individual's privacy interest in his or her cell phone. Ibid.
However, beside the fact that the incoming call directed to Detective Lagoa was by means of the defendant's cell phone, this case is distinguishable from Riley and its progeny. Here, Lagoa did not search the digital contents of the phone in any way; instead, he merely answered an incoming phone call. Cf. Commonwealth v. Sheridan, 470 Mass. 752, 763 (2015) (search of text messages); Commonwealth v. Mauricio, 477 Mass. 588, 593 (2017) (search of digital photographs); Commonwealth v. Dyette, 87 Mass. App. Ct. 548, 558-589 (2015) (search of call log).
Because Detective Lagoa initiated the call and was the intended recipient, the risk of intrusion into the defendant's private life through his cell phone was minimal. Simply put, the defendant's privacy interest in this specific call is distinct from his privacy interest in his cell phone as a ubiquitous tool for everyday life. See Riley, 134 S. Ct. at 2489 ("The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone"). Without resolving the question whether answering the cell phone by the police constituted a search or was admissible, we conclude that, even if inadmissible, allowing testimony of the call constituted harmless error.
At the time Detective Lagoa arrested the defendant and seized the cell phone he was carrying,[5] Lagoa had probable cause to believe the defendant was the same individual involved in the hand-to-hand transaction with Goetz. Lagoa also knew from Goetz that the individual was known to her as "J-Roc." From this information, Lagoa justifiably believed that initiating a call to the phone number associated with "J-Roc" on Goetz's cell phone would result in an incoming call to the cell phone seized from the defendant. After Lagoa directed Detective Lawless to make the call to the "J-Roc" contact, the defendant's seized phone immediately rang. The mere answering of it to confirm that the call was from the Goetz phone added little to the prosecutor's case. Therefore, based on the totality of the record before us, even if the call was inadmissible, "we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdicts." Commonwealth v. Tyree, 455 Mass. 676, 701 (2010).
2. Ineffective assistance of counsel. The defendant also claims, in this direct appeal, that his trial counsel was ineffective in failing to object to a portion of the jury instructions and in failing to request an instruction on good faith misidentification pursuant to Commonwealth v. Pressley, 390 Mass. 617, 619-620 (1983). See Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006). We disagree.
The trial judge's instruction on identification was a proper statement of the law and did not excuse the Commonwealth from proving that the defendant was the person police had previously observed engaging in criminal activity.[6] The instruction merely highlighted that the Commonwealth was allowed to prove the defendant's identity through circumstantial evidence. While it may have been prudent for counsel to object to the reference to "statements by the defendant to others about his participation" as there was no evidence of any such statements, the failure to object did not deprive the defendant of "an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
Similarly, defense counsel's failure to request a Pressley instruction did not result in ineffective assistance. In Commonwealth v. Willard, 53 Mass. App. Ct. 650, 661 (2002), defense counsel failed to request a Pressley instruction, but nonetheless "ably targeted [the] infirmities in identification during his cross-examination of the Commonwealth's witnesses ... [and] thoroughly argued misidentification in his closing argument to the jury." Defense counsel's actions here were analogous in this regard. Through cross-examination and summation at closing, defense counsel thoroughly advanced a misidentification theory. Thus, there is "no doubt that the defense of misidentification was squarely before the jury, and ... the failure of defense counsel to request a Pressley instruction did not amount to ineffective assistance of counsel." Ibid.
3. Sufficiency of the evidence supporting distribution of heroin conviction. The defendant contends that, since there were no chemical test results or testimony regarding the nature of the substance seized from Goetz, the Commonwealth failed to prove beyond a reasonable doubt that it was, in fact, heroin.[7] The Commonwealth acknowledges the oversight in failing to chemically test the substance and in failing to realize the mistake until after the presentation of evidence, but argues that sufficient circumstantial evidence was presented to prove the substance was heroin. We disagree.
Testimony that a defendant's actions are consistent with the transfer of an illicit substance is insufficient to support a conviction for distribution of it. "In a case involving a narcotics offense, the Commonwealth must prove beyond a reasonable doubt that the substance at issue is a particular drug because such proof is an element of the crime charged." Commonwealth v. MacDonald, 459 Mass. 148, 153 (2011) (citations and quotations omitted). When evidence of a substance's chemical composition is presented through a police officer's opinion, it "must not be conclusory, but must be based on objective criteria as well as on sufficient training or experience." Id. at 154. Here, in response to Detective Lagoa's conclusory statement that the item seized from Goetz upon her arrest was a bag of heroin, defense counsel appropriately objected and the statement was struck.[8] The prosecutor then asked Lagoa to describe the contents of the bag by its size, color, and texture. He responded only that it was a "brown powdery substance." None of the officers who testified were asked to identify the substance as heroin based on their training and experience in identifying narcotics and no evidence was presented to show that an independent field test was conducted.[9] Viewing the entire record, we agree with the defendant that the evidence here was insufficient to prove beyond a reasonable doubt that the substance underlying the conviction of distribution of heroin was, in fact, heroin. Therefore, we must vacate that conviction.[10]
Conclusion. On the indictment charging the defendant with distribution of heroin (second or subsequent offense), the judgment is reversed, the verdict and finding of guilt are set aside, and judgment shall enter for the defendant. The remaining judgments are affirmed.
So ordered.
Reversed and judgment entered in part; otherwise affirmed.

After the jury verdicts the defendant pleaded guilty to a second or subsequent offense on each conviction.

The judge also did not err in finding that Detective Ramos had reasonable suspicion to attempt to stop the suspect on the scooter because he matched the description of the individual involved in the alleged drug transaction with Goetz. Any variations in the descriptions, including the prominent colors of the scooter, were insignificant and did not erode his reasonable suspicion. See Commonwealth v. Bell, 78 Mass. App. Ct. 135, 139 (2010). Moreover, as the motion judge noted, it is significant that "during the search and chase, Detective Ramos observed no other scooters or males matching the description given in the BOLO." See Commonwealth v. Mercado, 422 Mass. 367, 371 (1996).

The defendant lacks the standing required to contest the search of Goetz's cell phone. See Commonwealth v. Santoro, 406 Mass. 421, 422 (1990). See also Commonwealth v. Santiago, 470 Mass. 574 (2015).

The seizure of the cell phone was proper and incident to the lawful arrest. See Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 453-454 (2015).

The relevant portion of the instruction is as follows:
"It's not essential that at the moment of the crime the person committing the act be identifiable, as the Commonwealth may prove the defendant's involvement by other means, including physical evidence, circumstantial evidence, statements by the defendant to others about his participation, or some combination thereof."

The defendant makes no argument concerning the sufficiency of the evidence underlying his convictions of possession of cocaine with intent to distribute and possession of heroin with intent to distribute. Sufficient evidence was presented on those charges showing that the drug samples, which came from the bags discarded by the defendant during pursuit, were chemically tested.

The Commonwealth conceded at oral argument that testimony about Goetz's hearsay statement to police that the substance was heroin is irrelevant.

We reject the Commonwealth's argument that, because there was sufficient evidence to prove that some of the plastic bags discarded by the defendant contained heroin, the jury were entitled to infer that the bag seized from Goetz came from the same source and was therefore also heroin. No evidence was presented to show the discarded bags possessed any distinctive characteristics that were similar to the bag seized from Goetz.

Because the defendant received identical concurrent sentences on the convictions, there is no need to remand for resentencing.